In re KAY HOMES, INC., Debtor.

SECURITY SAVINGS AND LOAN AS-SOCIATION OF DICKINSON, TEXAS,

v.

KAY HOMES, INC., David Wight Construction Company, Inc. and Gulf Coast Engineering and Surveying.

Adv. No. 85–0260–H3.

United States Bankruptcy Court, S.D. Texas, Houston Division.

Feb. 20, 1986.

Stephen E. Ulrich, Ulrich & Ulrich, Houston, Tex., for defendant.

Charles M. Jordan, Barlow, Todd, Crews & Jordan, Houston, Tex., for plaintiff.

### DECISION OF İNTERPLEADER ACTION

EDWARD J. RYAN, Bankruptcy Judge.

The Court is fully aware that the trial court may not blindly accept the proposed findings of fact and conclusions of law of the prevailing party. *United States v. El Paso Natural Gas,* 376 U.S. 651, 84 S.Ct. 1044, 12 L.Ed.2d 12 (1964).

However, when the proposed findings are consistent with the evidence and the conclusions are agreeable to the state of the law, no useful purpose would be served by recasting the same in the language of the Court.

Accordingly, the substance of the prevailing parties proposed findings of fact and conclusions of law are made and stated simultaneously with the filing of this memorandum, with the exception of conclusion of law number 12, which is stricken. The Court finds that the facts of the case at hand do not justify the sanctions sought by the prevailing party.[1]

---

1. *See,* S.M. Kassin, *An Empirical Study of Rule* ▮ *11 Sanctions* (Federal Judiciary Center 1985).

## I.

## FINDINGS OF FACT

1. Trial of this matter occurred on February 5, 1986. Plaintiff, Security Savings and Loan Association, is a commercial savings and loan institution chartered pursuant to the laws of the State of Texas with its principal place of business at Dickinson, Texas.

2. Defendant/Counterplaintiff, Kay Homes, Inc. is a corporation organized under the laws of the State of Texas with its principal place of business at Houston, Harris County, Texas. Kay Homes, Inc., is Debtor and Debtor-in-Possession in these proceedings pursuant to Chapter 11 of the United States Bankruptcy Code which were initiated on August 31, 1984.

3. David Wight Construction Company, Inc. ("Wight") is a corporation organized under the laws of the State of Texas.

4. Gulf Coast Engineering and Surveying ("Gulf Coast") is a sole proprietorship owned by James Gartrell with its principal place of business in Texas City, Texas.

5. On August 31, 1984, the date of initiation of the Chapter 11 proceedings, two funds of money established by Kay Homes, Inc. were on deposit in accounts at Security Savings and Loan Association (hereinafter "Security Savings"). On the date of filing the petition, one fund was in the amount of $30,192.52, and the other fund was in the amount of $25,086.61. It is undisputed that both accounts were in the name of "Kay Homes, Inc."

6. The Debtor is in the business of developing real estate and constructing and selling houses to the general public.

7. Prior to these proceedings funds were disbursed from the two accounts at the request of the Debtor in the ordinary course of business, upon approval of the chairman of the board of Security Savings, W.G. Hall, Jr. All disbursements from these funds were made by check to "Kay Homes, Inc." These checks were deposited at Citizens State Bank in a checking account over which Kay Homes, Inc. had unrestricted sole signatory authority. There were no restrictions on use of the

funds at Citizens State Bank, and the funds were routinely disbursed by Kay Homes in the ordinary course of business. The primary use of the funds was in developing Brookglen III subdivision.

8. After the Chapter 11 case was commenced, the Debtor sought use of the funds and demanded turnover of the funds from Security Savings and Loan. Wight and Gulf Coast also demanded the funds in payment for work done for Kay Homes, Inc. prior to August 31, 1984. Thereafter, Security Savings and Loan interpleaded the funds, with interest.

9. It is undisputed that Security Savings and Loan claims no interest in the funds interpleaded into the registry of the Court.

10. Wight and Gulf Coast claim entitlement to the funds as "trust funds" pursuant to § 162.001 *et seq.* of the Texas Property Code. In their Joint Trial Statement, Wight and Gulf Coast have also claimed entitlement to the two funds pursuant to an "express contractual trust." There is absolutely no evidence of an express trust. There is no evidence of any intention by Kay Homes, Inc. to create a trust in favor of any party. There is no evidence of any written document by which any party claims to have created a trust.

11. Kay Homes, Inc. has counterclaimed for turnover pursuant to 11 U.S.C. § 542 and 11 U.S.C. § 543. The Court finds that both funds of money were held by Kay Homes, Inc. on the date of filing of the petition and that Kay Homes, Inc. enjoyed legal title to the funds on that date. Even if an express trust had existed, turnover is still required by § 542 because the estate consists of "all legal and equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1).

12. The Court also finds that Kay Homes, Inc. enjoyed equitable title to the funds at Security Savings and Loan. Although disbursements required approval by W.G. Hall, Jr., disbursements from the funds historically were made only to "Kay Homes, Inc." and were deposited into a

Citizens State Bank checking account under the Debtor's exclusive control. Prior to the Chapter 11 proceedings, the Debtor was free to spend the funds in that checking account as it saw fit in the ordinary course of business.

13. Kay Homes, Inc. listed Gulf Coast and Wight on the Chapter 11 petition, and filed computer address cards for these parties in interest with the Clerk so that Wight and Gulf Coast would be notified of the bankruptcy proceedings. This is consistent with the local rules of this Court. Kay Homes did not list Wight and Gulf Coast on its schedules due to a dispute concerning the obligations and work of Wight and Gulf Coast, and because of a question of whether the obligation was owed by the Debtor or by a joint venture between the Debtor and Security Savings. The parties are in agreement that the settlement agreement between the joint venturers is not relevant to the resolution of this adversary proceeding. The joint venture between the Debtor and Security Savings was dissolved the day before the Debtor filed its bankruptcy petition.

14. The Order for Meeting of Creditors issued by the Court on September 19, 1984, attached hereto as Exhibit "A," which is mailed by the Clerk to all parties in interest having a computer address card on file, provided a bar date for the filing of claims of January 7, 1985. Wight and Gulf Coast signed their claims on January 28, 1985 and filed them on January 29, 1985.

15. To grant Gulf Coast's and Wight's claims to these monies would grant them a preference over other unsecured creditors of Kay Homes, Inc. in contravention of 11 U.S.C. § 547.

16. Gulf Coast and Wight also filed mechanic's and materialmen's ("M & M") liens against the property located in the Brookglen III subdivision. These M & M liens, even if valid, operate only as a lien on real estate and improvements situated thereon. *Texas Property Code* § 53.002. The validity or non-validity of the M&M liens is not relevant to the monies on account and is not an issue before this Court in this proceeding.

II.

## CONCLUSIONS OF LAW

1. This Court has subject matter jurisdiction over this controversy, and personal jurisdiction of the parties hereto.

2. Security Savings claims that Wight and Gulf Coast had colorable claims to the funds and it was for this reason that it failed to respond to the Debtor's demand for turnover. The statute upon which Wight and Gulf Coast rely expressly excludes from its operation "savings and loans and other lenders." *Texas Property Code* § 162.004. Wight and Gulf Coast had no claim colorable under Texas state law against Security Savings for the funds. Security Savings' allegation that inconsistent demands for payment exposed it to inconsistent adjudications and multiple liability is a groundless theory in view of § 162.004 of the Texas Property Code. At trial, Security Savings waived any claim to attorneys' fees or costs in commencing the interpleader action, and accordingly, judgment will be entered denying any such claim of Security Savings to attorneys' fees and costs.

3. Because Kay Homes, Inc. enjoyed legal and equitable title to the funds, turnover was required as a matter of law. *Georgia Pacific Corp. v. Sigma Serv. Corp.*, 712 F.2d 962 (5th Cir.1983); *In Re Quality Holstein Leasing*, 752 F.2d 1009 (5th Cir.1985). The intent of the turnover provisions of the Bankruptcy Code is to prevent precisely the kind of unnecessary delay which has been occasioned in this instance. The Debtor should not be denied use of the property and forced to litigate to recover property of the estate. It is for the Bankruptcy Court, not a stakeholder with possession of the assets in which the debtor has an interest, whether legal or equitable or both, to determine the right to possession. *Georgia Pacific Corp. v. Sigma Serv. Corp., supra* at 968.

4. The Texas statute of frauds requires a trust instrument to be evidenced by a writing, or an unequivocal transfer in trust. Kay Homes, Inc. never evidenced

any intention to create an express trust in favor of Wight and Gulf Coast. The *Texas Property Code* § 112.004 states as follows:

§ 112.004. *Statute of Frauds.*

A trust in either real or personal property is enforceable only if there is written evidence of the trust terms bearing the signature of the settlor or the settlor's authorized agent. A trust consisting of personal property, however, is enforceable if created by:

(1) a transfer of the trust property to a trustee who is neither settlor nor beneficiary if the transferor expresses simultaneously with or prior to the transfer the intention to create a trust; or

(2) a declaration in writing by the owner of property that the owner holds the as trustee for another person or for the owner and another person as a beneficiary.

In the instant case, there is no evidence of actual compliance or intent to comply with § 112.004.

5. In the instant case, there was no division of legal and equitable title to the monies, and no beneficiary was designated. No express trust ever was created in the transaction. *Texas Property Code* § 112.-001. Although Security Savings claims to have been a "trustee," in its Trial Statement, there never was any transfer to Security Savings in connection with the accounts in question.

There is no evidence that Kay Homes, Inc. ever intended that a trust be created in the funds. Accordingly, the Court must conclude that Kay Homes, Inc. had legal and equitable title to the monies in question.

6. Accordingly, this Court finds that the monies on deposit on August 31, 1984 at Security Savings and Loan Association in Dickinson, Texas constitute property which the trustee may "use, sell, or lease" under § 363 of the United States Bankruptcy Code. Under § 1107(a) a debtor in a Chapter 11 case is given all the rights and powers of a trustee under that chapter (except the right of compensation). Under § 103(a) the powers of a trustee enumerated in Chapter 5 are generally applicable to a case under Chapter 11. Thus, a debtor-in-possession, such as Kay Homes, as well as a trustee has all of the rights, powers, and duties provided by § 541 and § 542. *Georgia Pacific Corp. v. Sigma Service Corp., supra* at 966 n. 1. Accordingly, turnover of the funds in question to Kay Homes, Inc. under § 542 of the Bankruptcy Code is required.

7. Section 542 states as follows:

§ 542. Turnover of Property to the Estate.

(a) Except as provided in subsection (c) or (d) of this section, an entity other than a custodian, in possession, custody or control during the case of property that the trustee may use, sell, or lease under § 363 of this title, or that the Debtor may exempt under § 544 of this title, *shall* deliver to the trustee, and account for, such property or the value of such property unless such property is of inconsequential value or benefit to the estate.

(Emphasis added).

8. Section 101(10) of the Bankruptcy Code defines custodian. Custodian means—

(a) a receiver or trustee of any of the property of the Debtor, appointed in a case or proceeding under this title;

(b) assignee under a general assignment for the benefit of the Debtor's creditors;

(c) trustee, receiver or agent under applicable law, or under a contract that is appointed or authorized to take charge of property of the Debtor for the purpose of enforcing a lien against such property, for the purpose of general administration of such property for the benefit of the Debtor's creditors;

This Court finds that there is no evidence in the record of any trustee relationship between the Debtor and Security Savings and Loan. Accordingly, the definitional test for a "custodian" has not been met, and Security Savings was not a custodian

under the Code. Thus, § 543 has no application in the instant case. Even if Security Savings was a "custodian," turnover would be required by § 543, and Security Savings has waived all claims for attorneys' fees and costs. Hence, the Court's judgment will deny any recovery to Security Savings under § 543.

9. Furthermore, Wight and Gulf Coast have no claim against the estate of Kay Homes, Inc. Although Wight and Gulf Coast had knowledge of these proceedings and were notified of the date by which claims must be filed, neither filed a proof of claim timely. Any claim, secured or unsecured, by Wight and Gulf Coast as against Kay Homes, Inc. is therefore barred by this Court's Order dated September 19, 1984. *Bankruptcy Rule of Procedure* 3003(c)(3). The Order clearly required proofs of claim to be filed on or before January 7, 1985 unless the creditor was listed as an undisputed claim. Neither Wight, nor Gulf Coast was listed on the Debtor's schedules as a creditor, and it was their responsibility to determine how or whether their claim was listed in the Debtor's Schedules. Plaintiff's Exhibit 8, a copy of the order setting the bar date, is clear and unequivocal on the point.

10. Both Wight and Gulf Coast admit receiving notice of the bankruptcy proceedings long before the bar date, and neither explained the failure to file a timely proof of claim. According to the file stamps on the proof of claims, both claims were signed on January 28, 1985 and filed on January 29, 1985. These claims were not filed timely and cannot serve as the basis for a claim against the Debtor. This result may be harsh, but the Debtor's estate does not include sufficient assets to pay all other claims in full. Under these circumstances, strict compliance with the requirements imposed by the Code, the Rules, and the orders of this Court regarding filing of claims must be observed. The bar date is in the nature of a statute of limitations and must be strictly observed.

11. Turnover is required pursuant to 11 U.S.C. § 542.

12. ~~The position of Security Savings and Loan in resisting the Debtor's demand for turnover and affirmatively advocating payment to Wight and Gulf Coast was unjustified and in violation of 11 U.S.C. § 542 and § 543. Security Savings and Loan will be required to pay the Debtor's reasonable attorneys' fees incurred in the defense of this interpleader action and the prosecution of this turnover action. Counsel for the Debtor is directed to provide an affidavit to the Court detailing the services rendered in connection with this effort.~~

13. Alternatively, the Court further concludes that even if the funds in question were statutory "trust funds" by virtue of Texas Property Code § 162.001, the asserted interests of Wight and Gulf Coast are statutory liens voidable pursuant to 11 U.S.C. § 545. The liens would not be enforceable against third-party, *bona fide* purchasers or recipients of the funds. They are "secret" unperfected liens on personal property, which are voidable by a trustee or Debtor-in-Possession. As such, the claims of Wight and Gulf Coast are void pursuant to 11 U.S.C. § 545(2).

14. Any conclusions of law more properly characterized as findings of fact shall be adopted as such. Any finding of fact more properly characterized as conclusions of law shall be adopted as such.

15. Judgment to be entered in accordance with these findings of fact and conclusions of law.