In the Matter of RIVERDALE SHOPPING CENTER AND DEVELOPMENT COMPANY, INC., Debtor.

**RIVERDALE SHOPPING CENTER AND DEVELOPMENT COMPANY, INC., Plaintiff,**

v.

Ronald D. WILLIAMS, Linda H. Williams, Gary Wonzer, J. Ed Wonzer, Jacqueline L. Pope, and Shirley Stewart, Defendants.

**Bankrupcty No. 84–2385.
Adv. No. 86–252.**

United States Bankruptcy Court, M.D. Florida, Tampa Division.

Oct. 31, 1986.

Roger Waltemyer, Fort Myers, Fla., for plaintiff.

Cindy L. Turner, Tampa, Fla., and George Knott, Fort Myers, Fla., for defendants.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

ALEXANDER L. PASKAY, Chief Judge.

THE MATTER under consideration in this Chapter 11 adversary proceeding is a Complaint for Declaratory Judgment filed by Riverdale Shopping Center and Development Company, Inc. (RSCD), the Debtor in the above-styled case. RSCD seeks a determination of its rights to and interest in certain real property located in Lee County, Florida. The relevant facts, as they appear from the record established at the final evidentiary hearing, are as follows:

In 1979, Robert K. Hughes as Trustee for the benefit of Hughes Enterprises (Hughes), Shirley Stewart, Gary Wonzer, Thomas Cronin, and King Symonds, held title to a tract of land consisting of approximately 13.2 acres in Lee County, Florida. In the spring of 1981, Gary Wonzer began plans to develop this real property along with a piece of property he owned in his individual capacity into a three phase project known as Forest Village Condominiums. Phase I and Phase II consisted of the 13.2 acres owned by Robert Hughes as Trustee, and Phase III consisted of the property owned individually by Gary Wonzer. Gary Wonzer prepared and submitted applications for zoning changes, obtained other permits and licenses, completed site engineering and obtained design and building plans, including a scale model of Phase I of the project. During this time Ronald D. and Linda H. Williams (Williams) expressed an interest in the Forest Village project, and after discussions with Gary Wonzer and others involved in the project, the Williams decided to purchase Hughes' interest in the property.

On July 18, 1986, the Williams executed a Trust Agreement setting out the terms of the purchase and the terms and conditions of the appointment of Gary Wonzer as Trustee. The Trust Agreement also stated that:

> The purpose of this Trust is to enter into a joint venture with Riverdale Shopping Center and Development Company to develop a condominium project known as Forest Village and to divide the profits from the development of the first 132 units as per the attached prospective, which is a material part of this Trust Agreement.

In August, 1981, the Hughes' interest in the property was conveyed to Gary Wonzer as Trustee. In connection with this transaction, Hughes took back a mortgage encumbering the property conveyed in order to secure the unpaid balance of the purchase price.

Shortly after this transfer, in September, 1981 a Joint Venture Agreement was executed by Gary Wonzer and Jack Pope as officers of RSCD and by Gary Wonzer as Trustee for the Williams' Trust. The Agreement set forth the limited purpose of the joint venture as acquiring and developing the property into Forest Village Condominiums, and stated that the property to be acquired was described in Schedule "A". Unfortunately, Schedule "A" was never physically attached to the Joint Venture Agreement, although the uncontradicted testimony of Gary Wonzer established that the property involved in the Joint Venture Agreement was the same property described in the Trust Agreement executed by the Williams in July, 1981.

King Symonds' and Thomas Cronin's interests in the Phase I and II property was sold to Jacqueline Pope, J. Ed. Wonzer, and Thelma Wonzer on November 17, 1981. On November 24, 1981, Jack Pope and Gary Wonzer, as officers of RSCD, and Gary Wonzer, individually and as Trustee, obtained a construction loan and executed a mortgage and note to Barnett Bank in the amount of $530,000. The note contained a future advances clause of up to $1,530,000. On this same date, Gary Wonzer, individually and as Trustee, deeded to RSCD the portion of the property that had been designated Building Area I—Phase I. On April 16, 1982, Gary Wonzer deeded to RSCD Building Area II—Phase I. Both of these parcels were ultimately released by Robert Hughes from the mortgage encumbering the parcels.

By the end of 1982 Buildings I and II in Phase I were completed and several units were sold. Five units in Buildings I and II were not sold, however, and were eventually lost to the construction lender in a foreclosure action. Because the Williams became concerned about the future of the project, the Trust Agreement was amended to provide that title to trust property could not be transferred without the express consent of the beneficiaries of the trust.

RSCD filed its Petition for Relief under Chapter 11 of the Bankruptcy Code in October, 1984. RSCD claimed as its only asset an interest in the proceeds of sale of the Phase I and II property and proposed a liquidating Plan of Reorganization in which the Phase I and II property would be sold and the proceeds distributed pro rata pursuant to the Joint Venture Agreement. The Williams opposed the sale on the basis that RSCD did not own the property involved and therefore had no right to sell property in which it had no ownership interest. RSCD subsequently filed this Complaint for Declaratory Relief, seeking a determination of the parties right to and interest in this property.

The primary issue to be resolved is whether there is any legal enforceable agreement which would require that the remaining Phase I and Phase II properties be conveyed to RSCD even though construction on the condominium project has ceased and RSCD no longer desires to develop the project, but merely liquidate it. The Williams urge that the Joint Venture Agreement is not enforceable because it is too vague and ambiguous and because it lacks an essential term, specifically an adequate description of the property. RSCD contends that even though Schedule "A" was not attached to the Joint Venture Agreement and the Joint Venture Agreement did not contain a description of the property, all the parties to the contract knew exactly what property was to be developed.

■ There is no doubt that all the parties to the Joint Venture Agreement knew which property was described in the missing Schedule "A". Although there was no actual description in the Joint Venture Agreement itself, it is without dispute that the Phase I and Phase II property as described in and attached to the Williams' Trust Agreement is the same property that was to be developed pursuant to the Joint Venture Agreement. It was clearly the intention of all parties to the Joint Venture Agreement that the Williams' Trust was to contribute the land held by the Trust to the Joint Venture Agreement, and RSCD was to develop that land. This Court is satisfied that the Joint Venture Agreement is not too vague and ambiguous nor does it lack an essential term that would make it unenforceable.

■ This does not mean, however, that RSCD is entitled to have the property conveyed to it. Just as it is clear that the intention of the parties was that the Williams' Trust contribute the land held by the Trust to the project, it is equally clear that the parties intended that the land be developed by RSCD as Forest Village Condominiums. The parties did not intend and never contemplated a sale of this land as now proposed by RSCD. The Williams are under absolutely no obligation to contribute the property when the purpose of the Joint Venture Agreement has been frus-

trated and is no longer viable. The parties to the Agreement only intended for the joint venture to acquire the property in furtherance of the construction and management of the condominium project, and for no other reason. To interpret the Agreement otherwise would be to require the Williams' Trust to convey property to achieve a purpose neither contemplated nor intended by the parties. At all material times, the parties intended the property to be transferred only to develop the property as a condominium project, an objective no longer possible.

Based on the foregoing, this Court is satisfied that RSCD has no ownership interest in the Trust property nor does it have a right to compel a conveyance and sale of this property. Thus, this adversary proceeding shall be dismissed with prejudice.

A separate final judgment will be entered in accordance with the foregoing.