**In re NORRIS GRAIN COMPANY, Detroit HC, Inc., and Olympia Stadium Corporation, Debtors.**

**NORRIS GRAIN COMPANY, Detroit HC, Inc., and Olympia Stadium Corporation, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**Nos. 85–218–BK–J–GP, 85–231–BK–J–GP and 85–232–BK–J–GP.**
**Adv. No. 86–314.**

United States Bankruptcy Court, M.D. Florida, Jacksonville Division.

Dec. 3, 1987.

James H. Post, Jacksonville, Fla., for plaintiffs.

Richard F. Mitchell, Washington, D.C., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

GEORGE L. PROCTOR, Bankruptcy Judge.

On September 25, 1986, the debtors filed a complaint against the Internal Revenue Service of the United States of America (the "IRS") to determine the debtors' federal tax liability and for adjudication of objections to defendant's proofs of claims. On April 9, 1987, the IRS filed a motion for an enlargement of time in which to file a claim for 1985 income taxes. Pursuant to an order of this Court, the IRS motion was consolidated with this adversary proceeding for purposes of discovery and trial. A trial was held on October 7, 1987, and the Court having considered the evidence and the arguments, finds as follows:

### Findings of Fact

1. On November 5, 1984, the debtors filed a consolidated income tax return for the year ending February, 1984, showing a total tax due of $391,533, which was paid by the debtors.

2. On March 25, 1985, Norris Grain Company ("NGC") filed a petition for reorganization under Chapter 11 of Title 11 of the United States Code.

3. On March 27, 1985, Detroit HC, Inc. ("Detroit HC") and Olympia Stadium Corporation ("Olympia") filed petitions for reorganization under Chapter 11.

4. On March 28, 1985, the debtors sent a notice of their Chapter 11 filings to the attention of the Special Procedures Unit of the IRS in Jacksonville, Florida. The Special Procedures Unit is a department of the IRS responsible for filing proofs of claim on behalf of the IRS in these Chapter 11 cases.

5. On April 3, 1985, this Court established July 23, 1985, as the bar date for filing claims against NGC and July 25, 1985, as the bar date for filing claims against Detroit HC and Olympia.

6. In April, 1985, the IRS received notice of the bar dates.

7. On May 1, 1985, the debtors filed an application for an extension of time until November 15, 1985, for filing their consolidated income tax return for the year ending February 1985. In the application, the debtors listed the tentative amount of tax due as zero. In reliance upon the application, the IRS did not file a claim prior to the bar date with respect to the debtors' 1985 income taxes.

8. On May 14, 1985, the debtors, after having their 1984 income tax return reviewed by their tax attorneys, filed an amended 1984 income tax return with the IRS Service Center in Atlanta, Georgia. The amended 1984 return indicated an unpaid tax liability in the amount of $1,690,026. The debtors also forwarded a copy of the amended 1984 return to the Special Procedures Unit in Jacksonville, Florida.

9. On May 31, 1985, the IRS filed Claim No. 2 in the case of NGC, Case No. 85–218–BK–J–GP, in the amount of $365.75 for interest which arose upon the debtors' failure to timely pay the 1984 income taxes reported in its original 1984 return. The IRS did not conduct any further examinations prior to the bar date regarding the need to file additional proofs of claim in the NGC case.

10. On July 12, 1985, the IRS filed Claim No. 8A in the estimated amount of $1,155.63 in the case of Olympia, Case No. 85–232–BK–J–GP. This claim was later withdrawn by the IRS.

11. On July 29, 1985, the IRS filed Claim No. 2 in the estimated amount of $165,732.49 in the case of Detroit HC, Case No. 85–231–BK–J–GP. The same claim was also docketed as Claim No. 14 in the case of NGC, Case No. 85–218BK–J–GP. The IRS stated at trial that both of these claims had been withdrawn.

12. On November 14, 1985, the debtors filed their consolidated income tax return for the year ending February, 1985, showing a total tax due of $573,038.

13. On November 26, 1985, the IRS, relying upon the debtors' 1985 income tax return, filed Claim No. 18 in the case of NGC, Case No. 85–218–BK–J–GP, asserting a claim in the amount of $573,038 for 1985 income taxes.

14. On December 19, 1985, six months after the bar date, the IRS, relying upon the debtors' 1984 amended income tax return, filed Claim No. 20 in the case of NGC, Case No. 85–218–BK–J–GP, asserting a claim in the amount of $1,690,026 for unpaid 1984 income taxes. This claim, which was based upon the debtors' 1984 amended income tax return filed over seven months earlier, was the first in which the IRS asserted a claim for 1984 income taxes.

15. On January 15, 1986, the debtors filed a second amended 1984 income tax return which reduced its tax liability to $1,673,458. The debtors mailed a copy of the second amended 1984 return to the Special Procedures Unit in Jacksonville, Florida.

16. On July 16, 1986, the debtors' Second Amended Consolidated Plan of Reorganization (the "Plan") was confirmed. The Plan provided for the full payment of all allowed claims. The debtors have paid all allowed claims in full except those creditors, such as retirees, who were to be paid over an extended period of time.

17. On August 15, 1986, the debtors filed objections to the proofs of claim filed by the IRS.

18. On September 25, 1986, the debtors filed a complaint to determine their federal tax liability and their objections to the IRS claims on the grounds that the claims were untimely.

19. On April 19, 1987, the IRS filed a motion for an enlargement of time in which to file a claim for 1985 income taxes.

### Conclusions of Law

■ 1. The bar date for filing proofs of claim in Chapter 11 cases is a mechanism intended by Congress to provide the debtor and its creditors with "finality." *See e.g., In re Chicago Rock Island and Pacific RR Co.*, 788 F.2d 1280 (7th Cir.1986); and *Hoos*

*& Co. v. Dynamics Corp. of America*, 570 F.2d 433, 439 (2d Cir.1978). For this reason, courts look upon the bar date as being:

> [in] the nature of a statute of limitations [which] must be strictly observed.

*In re Kay Homes Inc.*, 57 B.R. 967, 971 (Bkrtcy.S.D.Tex.1986).

■ The congressional goal of finality precludes the Bankruptcy Courts from "finding exceptions to these rules in the supposed interest of equity." *Hoos & Co.*, 570 F.2d at 439; *See also, In re Piqott*, 684 F.2d 239, 243 (3rd Cir.1982); *In re Evanston Motor Co., Inc.*, 26 B.R. 998, 1005 (N.D.Ill.1983), *aff'd*, 735 F.2d 1029 (7th Cir. 1984). Thus, although aware that a bar date, like other limitation periods, would inevitably cause hardship on those who failed to act timely, Congress decided that the goal of finality is of greater benefit to the public than any benefit derived from allowing individual exceptions to the bar date. *Hoos & Co.*, 570 F.2d at 439; *In re Stern*, 70 B.R. 472, 476 (Bkrtcy.E.D.Pa. 1987).

■ 2. Nevertheless, amendment to a claim is often allowed where the purpose is to cure a defect in the claim as originally filed, to describe the claim with greater particularity or to plead a new theory of recovery on the facts set forth in the original claim. *See, Szatkowski v. Meade Toole & Die Co.*, 164 F.2d 228, 230 (6th Cir.1947); *In re G.L. Miller & Co.*, 45 F.2d 115 (2d Cir.1930). However, the courts must still subject such amendments to a careful inspection. Says the Eleventh Circuit:

> [C]ourt[s] must subject post bar date amendments to careful scrutiny to assure that there [is] no attempt to file a new claim under the guise of amendment.

*In re International Horizons*, 751 F.2d 1213 (11th Cir.1985).

3. Under the traditional analysis, the factor most often considered is whether the "amended" claim arose out of the same transaction or occurrence set forth in the original timely filed claim. *See, In re AM International, Inc.*, 67 B.R. 79,82 (N.D.Ill. 1986); *In re Hunt*, 59 B.R. 718 (Bkrtcy.D. Me.1986); *In re Sapienza*, 27 B.R. 526

(Bkrtcy.W.D.N.Y.1983); and *In re Overly Hautz Co.*, 57 B.R. 932, 936 (Bkrtcy.N.D. Ohio 1986). Other courts have expanded this notion and have allowed amendments to tax claims where the tax claims were of the "same genre" as the original claims or where the original and amended claims were both "within the matrix of an indebtedness due the federal government in their revenue collection function." *See, Menick v. Hoffman*, 205 F.2d 365 (9th Cir.1953); *In re Emerald Green Corp.*, 2 B.C.D. 938 (Bkrtcy.E.D.N.Y.1976); *In re Midwest Teleproductions Co., Inc.*, 69 B.R. 675 (Bkrtcy.N.D.Ohio 1987).

4. Applying the traditional test to the case at bar, it is quite clear that the amended claim for $1,690,026 in income taxes is substantially different than the $365.75 claim for interest based upon the debtors' late payment of $391,533 of 1984 income taxes. One claim is for accrued interest while the other asserts a claim for unpaid corporate income taxes. Indeed, it is also worth noting that a taxpayer's liability for interest on late payment of income taxes and a taxpayer's liability for unpaid taxes arise out of separate statutory provisions of the Internal Revenue Code.[1] Upon this premise, the Court finds that the amended claim does not arise out of the same transaction as the original claim and is in fact an assertion of a new claim.

5. The government has argued that this Court ought to apply the more liberal standard espoused in cases such as *In re Miss Glamour Coat Co.*, 80–2 USTC ¶ 9737 (S.D.N.Y.1980), where the court suggested that a "balancing of the equities test" ought to be applied to allow a post-bar date amendment. Under that test, the factors which the Court would look to are:

(1) whether the debtor and creditors relied upon the IRS's earlier proofs of claim or whether they had reason to know that subsequent proofs of claim would follow;

(2) whether the other creditors would receive a windfall to which they are not entitled on the merits by the Court

not allowing this amendment to the IRS proof of claim;

(3) whether the IRS intentionally or negligently delayed in filing the proof of claim stating the amount of corporate taxes due;

(4) the justification, if any, for the failure of the IRS to file for a time extension for the submission of further proofs of claim; and

(5) whether or not there are any other considerations which should be taken into account in assuring a just and equitable result.

Without deciding that the "balancing of the equities test" is the appropriate standard to be applied, the Court will indulge in argument and will discuss these factors as they relate to the amended claim filed by the IRS.

6. Applying the first factor, the Court finds that the original $365.75 interest claim did not provide notice to the Court or any interested party that a subsequent claim for unpaid income taxes would be forthcoming. In fact, the original claim affirmatively states that the "Tax Due" from the debtors for their 1984 income taxes was "None." This provides little, if any, notice of a possible amendment.

Another factor often considered in determining whether there was notice of a possible amendment is whether the amendment is reasonably related to the amount stated in the original claim.

Ordinarily, to be within the scope of a permissible amendment, the second claim should not only be of the same nature as the first *but also within the amount to which the first claim provides Notice*. *In re AM International, Inc.*, 67 B.R. 78, 82 (N.D.Ill.1986). On this issue, the Court finds that the $1,690,026 IRS amendment is not reasonably within the amount of the original $365.75 claim. In fact, the "amended" claim of $1,690,026 seeks an increase of some 6,188 percent.

---

1. Income taxes imposed upon corporations arise under I.R.C. § 11 (Supp.1987), whereas interest for the late payment of taxes is derived I.R.C. § 6601 (Supp.1987).

108

As an alternative to this argument, the IRS asserts that the amendment ought to be allowed under the "informal proof of claim doctrine." Under this doctrine, the Bankruptcy Court may accept an informal, amendable claim, if that informal claim apprises the Court of the creditor's intention to hold the debtor liable. Here, the creditor has not filed any such paper prior to the bar date which evidences an intention to hold the debtor liable for unpaid income taxes. Accordingly, the Court cannot allow an amendment to the IRS proof of claim under this doctrine.

7. The second factor announced in *Miss Glamour Coat* is whether the other creditors would receive a windfall to which they are not entitled as a result of the Court not allowing this amendment to the IRS proof of claim. The Court finds this factor to be inappropriate in deciding whether to permit the untimely amendment, for not only does such an analysis involve undue speculation, it also does nothing to promote the legislative goal of finality.

8. The third and fourth factors concern whether the creditor itself is at fault in failing to file a timely claim. As reflected in *Miss Glamour Coat,* courts have generally refused to grant relief where the creditor's own internal procedures are the cause of its failure to file timely proofs of claim. As the Eleventh Circuit stated in a related case:

This Court [refuses] to allow the Service to amend its proof of claim.... While amendments are to be freely allowed where justice so requires ... the Service's unexplained negligence does not present an instance under which justice or fairness require the allowance of an amendment.

*International Horizons,* 751 F.2d at 1216.

In this case, the IRS could have filed a timely claim with respect to the 1984 income taxes because it had received the

debtors' amended tax return over two months prior to the bar date. Moreover, not only did the debtors file their amended income tax return with the Service Center in Atlanta, they also mailed a copy of it directly to the IRS Special Procedures Unit in Jacksonville, which was the department responsible for filing proofs of claim. Under these circumstances, it is difficult to find justification for the IRS having failed to file a claim in a timely fashion. Had this been a private claimant, most courts would find two months a sufficient time in which to file a claim.

The excuse offered by the IRS for its failure to file a timely claim was that the IRS Service Center in Atlanta was unable to timely "process" the amended tax return within the two months before the bar date because it is overwhelmed with an immense workload. In addition, the IRS argues that the Special Procedures Division did not receive, or at least has no record of receiving, a copy of the amended tax return. For the reasons discussed, the Court finds these excuses insufficient both factually and legally.

First, it has long been held that where a litigant's own internal procedures are the cause of the failure to comply with proper legal procedures, courts should generally refuse to grant relief from the consequences of the lack of compliance. *In re Saltzmann,* 25 B.R. 125, 128 (Bkrtcy.E.D. Wis.1982). In this regard, the IRS "is to receive no special consideration in determination of its late claims." *In re International Horizons, Inc., supra* at 1219. In this case, all the evidence tends to point to a breakdown in the IRS' internal procedures rather than an insufficiency of time. To permit the IRS to now file an amended claim would be inequitable.[2]

The Court also finds as influential the fact that the IRS failed to timely move for an extension of time in which to file an amended claim. The only request for such

2. It should also be noted that, although the IRS contends that two months was an insufficient amount of time to have filed a claim in response to the debtors' amended return for 1984, the same amount of time was apparently sufficient for the IRS to review the debtors' application for extension to file its 1985 income taxes and decide that a claim for the 1985 taxes need not be filed prior to the bar date.

an extension was made at trial and, for the same reasons that the amendment was denied, the Court will deny the IRS's request for an extension of time.

 An extension of time for the filing of proofs of claim cannot be granted unless a creditor can show "excusable neglect." "Excusable neglect" requires a showing that the creditor's failure to timely file a proof of claim was due to circumstances beyond its reasonable control. *In re South Atlantic Financial Corp.*, 767 F.2d 814 (11th Cir.1985).

> The Army bases its claim of excusable neglect on its own cumbersome internal procedures. Delay resulting from a breakdown in a creditor's internal procedures, however, does not constitute excusable neglect within the meaning of Rule 9006(b)(2).

*In re Century Brass Products*, 72 B.R. 68, 10 (Bkrtcy.D.Conn.1987).

Thus, because the failure of the IRS to file a timely claim was due to its own internal problems, it is not entitled to an extension of time to file its claim for 1984 taxes under the doctrine of "excusable neglect."

As for the second reason offered, the Court finds the testimony of the IRS representative is insufficient. Specifically, the testimony that the IRS Special Procedures Division had no record of having received the debtors' amended tax return was negated by the admission that the amended tax return could have been simply lost or mishandled. Thus, the Court finds no reason to justify the allowance of an amended claim on these grounds.

Finally, the Court in *Miss Glamour Coat* suggest a consideration of other factors which may justify the allowance of an untimely amendment to a proof of claim. Having found none, the Court will stand by its decision disallowing the IRS amendment to its proof of claim.

 Separate from its claim for unpaid 1984 income taxes, the IRS has also moved for an extension of time with regard to filing a claim for 1985 taxes. Here, the Court finds that the underlying facts war-

rant such an extension. This is based upon the testimony which revealed that the debtors filed an application in 1985 for an extension of time in which to file its 1985 tax return and indicated a tentative tax due of zero. The IRS, in failing to file a claim for 1985 income taxes, relied upon the debtors' assertion that no tax would be due for 1985. Accordingly, the Court finds the failure of the IRS to file a timely claim for the 1985 income taxes was the result of excusable neglect and the IRS claim for $573,038 for 1985 income taxes is deemed to have been timely filed.

The Court will enter a final judgment in accordance with these Findings of Fact and Conclusions of Law.