In re Robert Carl JONES, Sr., Debtor.

Bankruptcy No. 96–3157–3P1.

United States Bankruptcy Court,
M.D. Florida,
Jacksonville Division.

March 30, 1998.

Janet H. Thurston, Cohen & Thurston, P.A., Jacksonville, FL, for Debtor.

Edward P. Jackson, Jacksonville, FL, for Claimant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

GEORGE L. PROCTOR, Bankruptcy Judge.

This case is before the Court upon Debtor's Objection to Claim 23 filed by Peggy P. Jones. Following a hearing on December 16, 1997, the Court enters the following Findings of Fact and Conclusions of Law:

### FINDINGS OF FACT

1. Robert Carl Jones, Sr. (Debtor), and Peggy P. Jones (Claimant) were husband and wife until a Final Judgment Dissolving Marriage was entered on July 22, 1992. (Debtor Ex. 5.)

2. Debtor's and Claimant's assets were divided in accordance with a Stipulation and Agreement entered into between the parties on July 17, 1992. (Debtor Ex. 1.)

3. On April 15, 1992, Debtor and Claimant filed a joint 1040 Income Tax Return for the year 1991. The total income tax required to be paid was $40,403.99. Of that total, $13,824.95 was paid through withholding, and $26,579.05 was remitted with the return.

4. Of the amount paid through withholding, $11,596.40 was attributable to amounts withheld from Debtor's wages. (Debtor Ex. 4.) The remaining $2,228.55 was withheld from Claimant's wages. (*Id.*) At the time taxes for the year 1991 were paid, Debtor and Claimant were separated and did not have a joint bank account.

5. On September 28, 1995, Debtor filed a 1045 Application for Tentative Refund, seek-

ing a refund of all taxes paid in 1991. (Debtor Ex. 3.)

6. The application was prepared by Michael Carter, a certified public accountant employed by Carter, Merolle & Company, P.A. The application was predicated on a carryback of loss generated by R.C. Jones Furniture Company, of which the debtor is the sole shareholder.

7. Carter testified that upon examining the financial records of the corporation he discovered that its books were overstated and its assets overvalued. He therefore advised Debtor to carry the loss back, which would generate a refund of all taxes paid in 1991.

8. The Internal Revenue Service granted the debtor's Application for Tentative Refund and issued a check in the amount of $40,403.99.

9. The refund check, dated December 29, 1995, was payable to the order of "Robert C. and Peggy P. Jones" and was mailed to Debtor at his residence address.

10. Upon his receipt of the check, the debtor wrote his bank account number on the back of the check along with the words "Deposit Only". The debtor then deposited the check into his personal checking account at Barnett Bank on January 4, 1996.

11. Debtor filed a petition under Chapter 11 of the Bankruptcy Code on May 28, 1996. June 11, 1997, was established as the bar date for claims by the Court.

12. On August 26, 1996, Claimant timely filed Claim 23 as a priority claim under 11 U.S.C. § 507(a)(8). Claim 23 is in the amount of $20,202, which is equal to one-half of the tax refund for the year 1991.

13. Debtor's Plan of Reorganization was confirmed by Order of this Court on July 17, 1997. On August 1, 1997, Debtor filed an objection to Claim 23, which was heard by the Court on December 16, 1997.

14. The debtor objects to Claim 23 on the grounds that the claim was improperly filed as a priority claim, and was also filed for an incorrect amount. At the hearing on the Objection, Claimant conceded that her claim is not entitled to priority status as set forth in 11 U.S.C. § 507(a)(8).

### CONCLUSIONS OF LAW

■ Debtor's first contention regarding Claim 23 is that amendment of the claim from priority to unsecured status should not be permitted because Claimant has not filed a motion to amend claim or a motion for leave to file a late claim. Although Claimant has not filed a formal motion to amend claim, the Court considers Claimant's admission during the hearing on Debtor's Objection that Claim 23 is not entitled to priority status, as well as Claimant's proposed Order and Finding of Facts requesting that the Court allow Claim 23 as an unsecured claim as a de facto motion to amend.

Debtor's next objection to Claimant's request to amend Claim 23 is based on the assertion that it would be inequitable to allow the filing of a claim after confirmation of the debtor's plan of reorganization. Debtor relies on case law holding that an amendment which alters the status of a claim from unsecured to secured equates to filing a new claim, which is impermissible post-confirmation. *See United States v. Int'l Horizons, Inc. (In re Int'l Horizons, Inc.)*, 751 F.2d 1213 (11th Cir.1985); *Holstein v. Brill*, 987 F.2d 1268 (7th Cir.1993); *In re Nat'l Merchandise Co., Inc.*, 206 B.R. 993 (Bankr. M.D.Fla.1997); *In the Matter of Alliance Operating Corp.*, 173 B.R. 326 (E.D.La.1994), *aff'd*, 60 F.3d 1174 (5th Cir.1995).

Finally, Debtor objects to the amount of Claim 23 and requests that the claim be disallowed in its entirety. At the very most, argues the debtor, Claimant is entitled to $2,228.55, the amount of the refund that corresponds to the amount of the taxes actually paid in by Claimant in 1991.

### A. Claimant's Proposed Amended Claim is a New Claim

■ The Eleventh Circuit has mandated that courts carefully scrutinize post bar date amendments to claim in order to prevent the filing of new claims disguised as amendments. *United States v. Int'l Horizons, Inc. (In re Int'l Horizons, Inc.)*, 751 F.2d 1213, 1216 (11th Cir.1985). Courts have traditionally permitted amendments if the amended

claim arises from the same transaction or occurrence underlying the original timely filed claim. *In re Haack*, 165 B.R. 501, 504 (Bankr.M.D.Fla.1994); *Norris Grain Co. v. United States (In re Norris Grain Co.)*, 81 B.R. 103, 106 (Bankr.M.D.Fla.1987), *aff'd*, 131 B.R. 747 (M.D.Fla.1990), *and aff'd*, 969 F.2d 1047 (11th Cir.1992). In addition, amendments are permissible "where the purpose is to cure a defect in the claim as originally filed, to describe the claim with greater particularity or to plead a new theory of recovery on the facts set forth in the original claim." *In re Int'l Horizons, Inc.*, 751 F.2d 1213, 1216 (11th Cir.1985).

It cannot be disputed that Claimant's proposed amended claim arose from the identical occurrence as her original claim: the 1991 tax refund. The controversy involves the Eleventh Circuit's prohibition of amendments which are, in effect, new claims. In *In re Nat'l Merchandise Co., Inc.*, 206 B.R. 993, 1000 (Bankr.M.D.Fla.1997), this Court held that an amendment which sought to change the status of a claim from unsecured to secured was actually an attempt to assert a new claim. The Court stressed the importance of the finality of the confirmed plan, as well as the res judicata effect of the plan in holding that such a change in status was not permissible. *Id.* at 999.

█ Although Claimant is not seeking to effect the identical change in status as was the claimant in *National Merchandise*, nonetheless she does seek to change the status of her claim from that of priority to unsecured. The Court finds that such an amendment would amount to the filing of a new claim, which is prohibited by the res judicata effect of the debtor's plan of reorganization. *See Id.; In the Matter of Alliance Operating, Corp.*, 173 B.R. 326, 330 (E.D.La.1994), *aff'd*, 60 F.3d 1174 (5th Cir.1995) (holding that the claimant was barred by res judicata and precedent from changing the status of the original claim from unsecured to priority); *In re Metro Transp. Co.*, 117 B.R. 143, 148 (Bankr. E.D.Pa.1990) (holding that an amendment changing the status of the claim from unsecured to priority sets forth a new claim); *In re Walls & All, Inc.*, 127 B.R. 115, 118 (W.D.Pa.1991) (holding that the amendment

of a claim from unsecured to priority status changes the nature of the claim).

### B. Equitable Considerations

█ An amendment to claim might also be allowed based on an equitable balancing-test, which involves a consideration of the following:

(1) whether the debtor and creditors relied upon the earlier proof of claim or had reason to know that a subsequent proof of claim would be filed;

(2) whether other creditors would receive a windfall if the court refused to allow amendment;

(3) whether claimant intentionally or negligently delayed in filing the amendment;

(4) the justification for the failure to file for an extension to the bar date;

(5) whether other equitable considerations exist which compel amendment.

*United States v. Int'l Horizons, Inc.*, 751 F.2d 1213, 1218 (11th Cir.1985); *National Merchandise*, 206 B.R. at 1000; *In re Miss Glamour Coat Co., Inc.*, 46 A.F.T.R.2d 80-6083, USTC § 9737 (S.D.N.Y.1980). The above factors have been characterized as focusing on prejudice, delay and bad faith. *In re Brown*, 159 B.R. 710, 716 (Bankr.D.N.J. 1993) (citing *In re Hanscom Retail Foods, Inc.*, 96 B.R. 33, 36 n. 5 (Bankr.E.D.Pa. 1988)).

█ Regarding the first factor, although there was no notice of a subsequent claim or amendment, no evidence has been presented establishing the debtor or creditors' reliance on Claimant's original proof of claim. The debtor and creditors in this case would be hard pressed to demonstrate any prejudice resulting from the allowance of the amendment given that Claimant seeks to amend her claim from priority to unsecured. Prejudice would only be present had a party acted to their detriment in reliance on the priority status of the claim. *Id.* The court is unaware of any such reliance by any party. The debtor and creditors were on notice of a $20,000 priority claim, and they will not be prejudiced if this claim is allowed as an unsecured claim.

The Court finds that the other creditors would receive a windfall were the Court to disallow the amendment. If amendment is not permitted, Debtor's Objection to Claim 23 will be sustained, given Claimant's admission that the claim was filed incorrectly. Absent this claim, a $20,000 windfall will be bestowed upon the debtor's other creditors.

The third and fourth factors address whether the creditor was at fault in failing to timely file the amended claim. *Norris Grain Co. v. United States (In re Norris Grain Co.)*, 81 B.R. 103, 108 (Bankr.M.D.Fla. 1987), *aff'd*, 131 B.R. 747 (M.D.Fla.1990), *and aff'd*, 969 F.2d 1047 (11th Cir.1992). Neither the debtor nor the claimant presented evidence on this issue. The Court is therefore left to its own impressions from the evidence which was presented, and concludes that these factors weigh against the claimant. The claimant offered no justification for filing the initial incorrect claim, for failing to timely request an amendment, or for neglecting to file a new claim prior to the bar date. The Court therefore attributes the incorrect filing to Claimant's negligence. Although negligent, however, the Court finds an absence of any bad faith on the part of the claimant.

The final element of the equitable balancing test requires the Court to consider any equitable considerations which compel amendment. One equitable consideration is the inequity which would result should the amendment not be allowed. Although the claimant did delay in requesting an amendment, the debtor was well aware of the nature and amount of the claim, which have not changed. Finding an absence of any prejudice or bad faith, the Court concludes that the equities in this case weigh in favor of allowing the amendment. The Court allows the amendment of Claim 23 to reflect an unsecured claim in the amount of $20,202.

## II. Amount of Claim 23

■ Claimant seeks to recover half of the tax refund, or $20,202, on the basis that the refund was equally owned by the debtor and the claimant. Therefore, according to the claimant, the debtor converted the claimant's share of the refund. The debtor, on the other hand, contends Claimant is not entitled

to any of the refund. Debtor's fallback argument is that if Claimant is entitled to a portion of the refund, that portion is $2,228.55, which is the amount Claimant contributed to the 1991 taxes.

■ Florida's Uniform Commercial Code provides that the law relating to the conversion of personal property is applicable to instruments as well. Fla.Stat.Ann. § 673.4201(1) (West 1998). Conversion is defined as "the unauthorized exercise of ownership over goods belonging to another to the exclusion of the owner's rights." *Wolfson v. Equine Capital Corp. (In re Wolfson)*, 56 F.3d 52, 54 (11th Cir.1995), *reh'g and reh'g en banc denied*, 66 F.3d 343 (11th Cir.1995). In order to determine whether the debtor in fact converted Claimant's interest in the refund check, the Court must first find that Claimant had an ownership interest in the refund.

■ The filing of a joint tax return does not affect the underlying property interests of the parties. *U.S. v. Elam*, 112 F.3d 1036, 1038 (9th Cir.1997). "Spouses filing a joint return have separate interests in any overpayment, the interest of each depending upon his or her income, i.e., an overpayment is apportionable to a spouse to the extent that he or she contributed to the overpaid tax." *Rosen v. United States*, 397 F.Supp. 342, 343 (E.D.Pa.1975). *See also Gordon v. United States*, 757 F.2d 1157, 1160 (11th Cir.1985) ("Where spouses claim a refund under a joint return, the refund is divided between the spouses, with each receiving a percentage of the refund equivalent to his or her proportion of the withheld tax payments."); *Gens v. United States*, 230 Ct.Cl. 42, 673 F.2d 366, 368 (1982), *cert. denied*, 459 U.S. 906, 103 S.Ct. 209, 74 L.Ed.2d 167 (1982), *and reh'g denied*, 459 U.S. 1081, 103 S.Ct. 503, 74 L.Ed.2d 642 (1982) (holding that Wife was not entitled to any part of the overpayment for failure of proof that she paid any part of it). Claimant's interest in the refund check therefore equals the amount which she contributed to the 1991 income taxes.

Because Claimant contributed at least $2,228.55 to the 1991 taxes, as evidenced by

her W–2 Wage and Tax Statement for 1991, the Court finds that Claimant had an interest in the refund check over which the debtor exercised ownership without the claimant's consent. The extent of the debtor's liability for the conversion of the refund turns on the actual value of the claimant's interest in the refund. *See* Fla.Stat.Ann. § 673.4201(2) (West 1998) ("In an action under subsection (1) [conversion of instruments], the measure of liability is presumed to be the amount payable on the instrument, but recovery may not exceed the amount of the plaintiff's interest in the instrument."). That value is dependent upon the amount of Claimant's ultimate contribution to the 1991 taxes.

 Although the claimant asserts title to one-half of the refund check, she has failed to produce any evidence showing the amount of her contribution to the 1991 taxes In an objection to claim, the burden of producing evidence rebutting the prima facie validity of the claim rests with the party making the objection. *In re Haack*, 165 B.R. 501, 503 (Bankr. M.D. Fla. 1994). However, once the objecting party has met that burden, the claimant must then prove that "its claim is valid *and in what amount*." *Id.* (emphasis added). The debtor, as the objecting party, rebutted the prima facie validity of proposed Amended Claim 23 producing evidence establishing Claimant's entire contribution to the 1991 taxes as $2,228.55. Therefore, the burden of establishing the validity and amount of the claim shifted to the claimant.

The claimant has failed to meet her burden of proving the validity of a claim in the amount of $20,202, as she has neglected to prove the amount she contributed to the taxes. The only evidence before the Court, given the lack of Claimant's testimony on the issue, demonstrates that Claimant contributed $2,228.55, the amount withheld from her 1991 wages. Thus, the Court holds that Claimant's interest in the refund check equals $2,228.55, and allows Claim 23 as an unsecured claim in that amount.

### III. Conclusion

Finding a formal motion to amend to be unnecessary, the Court permits the amendment of Claim 23 to reflect an unsecured claim in the amount of $20,202. The Court further finds that the debtor converted Claimant's interest in the tax refund, and that the value of Claimant's converted interest was $2,228.55. The Court therefore sustains Debtor's objection to the amount of Claim 23 and allows an unsecured claim for $2,228.55. A separate Order consistent with these Findings of Fact and Conclusions of Law will be entered by the Court.