In re FIRST SOFTWARE
CORPORATION, Debtor.

COMMISSIONER OF REVENUE FOR
THE COMMONWEALTH OF
MASSACHUSETTS, Appellant,

v.

FIRST SOFTWARE
CORPORATION, Appellee.

Civ. No. 87–1498–WF.

United States District Court,
D. Massachusetts.

May 11, 1988.

Jeffery S. Ogilvie, Legal Bureau, Mass.
Dept. of Revenue, Cambridge, Mass., for
appellant.

Richard Page, Choate, Hall & Stewart,
Boston, Mass., for appellee.

## MEMORANDUM AND ORDER

WOLF, District Judge.

This is an appeal by the Commissioner of
Revenue for the Commonwealth of Massa-
chusetts ("Commissioner") from the Bank-
ruptcy Court's denial of the Commission-
er's motion for relief from a September 17,
1986 Bankruptcy Court Order fixing Octo-
ber 31, 1986, as the "bar date" for filing
proofs of claim. By moving for relief from
the bar date order, the Commissioner
sought to secure payment of its claim
against the Debtor, First Software Corpo-
ration, for sales tax in the amount of $177,-
941.56. After a hearing in the Bankruptcy
Court on February 20, 1987, the Commis-
sioner's motion was denied from the bench.
A timely notice of appeal was filed on
March 2, 1987.

After briefing, a hearing concerning this appeal was held on May 5, 1988. For the reasons stated below, the decision of the Bankruptcy Court is affirmed.

## I. FACTS

In May of 1986, the Commissioner began a tax audit concerning sales taxes allegedly due and unpaid from First Software from 1983–1986. From May 16, 1986 until June 30, 1986, Bert Lawlor worked on this audit for the Commissioner. In July, 1986, Maura O'Neil took over the audit. At the time she took over the audit, Ms. O'Neil was aware that First Software was involved in bankruptcy proceedings.

Throughout July and August of 1986, Ms. O'Neil progressed on the audit with assistance from employees of First Software. On August 17, 1986, Ms. O'Neil became aware that the state statute of limitations on assessing a tax for the third quarter of 1983 was about to expire. Ms. O'Neil therefore requested that First Software voluntarily waive the statute of limitations as it applied to any potential sales tax liability for that quarter by extending the assessment period to December 31, 1986. Richard Faulk, president of First Software, agreed to the extension.

During the course of the audit, Ms. O'Neil attempted to ascertain whether or not First Software was entitled to any sales tax exemptions. Ms. O'Neil determined that First Software might be eligible for exemption for "sales for resale" wherein the buyer purchases the item for the purpose of "reselling" it to his own customer. In order to claim this exemption, First Software would have to submit a "resale certificate" to support its claim. On September 16, 1986, Ms. O'Neil informed First Software's employees about the applicable exemption, and allowed them additional time to contact their customers and obtain the necessary documents.

While the Commissioner's audit was ongoing, First Software was proceeding towards a reorganization under Chapter 11. On September 16, 1986, First Software filed a motion in the Bankruptcy Court to establish a bar date for proofs of claim.

The Bankruptcy Court allowed First Software's motion on September 17, 1986, setting a bar date of October 31, 1986.

On September 26, 1986, counsel for First Software prepared a "Notice of Bar Date". According to the affidavit of Janet Roitman, a legal assistant at the firm representing First Software, this notice was sent by mail to the Commissioner on September 26 or 27, 1986, though the Certificate of Service was not executed by Ms. Roitman until October 22, 1986. The attached list of creditors indicates that the notice was sent to the Department of Revenue at 125 First St., instead of the correct address of 215 First St.

Before the Bankruptcy Court, the Commissioner argued that it was not sure that the notice was ever delivered to the Department of Revenue. In its Supplemental Brief for this court, however, the Commissioner admitted that it had recently discovered a date stamped copy of the notice, which was received by the Department on September 30, 1986. Nevertheless, Ms. O'Neil testified that she was never informed of the October 31, 1986 bar date. She completed the audit nineteen days after the bar date, on November 19, 1986, and mailed a notice of the tax due to First Software.

Upon receiving the Commissioner's assessment, First Software did not then raise or rely on the bar date, but instead requested a "pre-assessment conference" as provided by state law. In scheduling this conference, Ms. O'Neil again realized that the three-year statute of limitations in assessments was again about to expire. Accordingly, on December 19, 1986, she again requested and received from First Software's president, a voluntary waiver of the limitations period for taxes due for the third and fourth quarters of 1983 and the first quarter of 1984. No mention was made of the passage of the bar date.

On January 20, 1987, counsel for First Software notified the Commissioner that no proof of claim for the taxes at issue had been filed. Counsel informed the Commissioner that before attempting further action against First Software, it should file a

proof of claim. At the same time, counsel informed the Commissioner that First Software reserved its right to challenge the timeliness of any such filing.

On January 29, 1987, the Commissioner filed his motion with the Bankruptcy Court for relief from the bar date, along with a proposed proof of claim for $117,941. A hearing was held in the Bankruptcy Court on February 20, 1987, at which time Ms. O'Neil testified and her affidavit was made a part of the record. At the conclusion of the hearing, the Bankruptcy Court denied the Commissioner's motion. This appeal followed.

## II. CONCLUSIONS OF LAW

### A. *Standard of Review*

An appeal from a bankruptcy court is governed by Bankruptcy Rule 8013. Rule 8013 provides:

> On an appeal the district court or bankruptcy appellate panel may affirm, modify, or reverse a bankruptcy's judgment, order, or decree or remand with instructions for further proceedings. Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses.

Under Rule 8013, district courts shall review Bankruptcy Court's conclusions of law *de novo. In re Pizza of Hawaii, Inc.*, 40 B.R. 1014 (Bkrtcy.D.C.Hawaii) *aff'd*, 761 F.2d 1374 (9th Cir.1984); *Goldsby v. Stewart*, 46 B.R. 692 (S.D.Ala. 1983); *In re Emmer Bros. Co.*, 52 B.R. 385 (D.C.Minn.1985).

The applicable legal standard for granting or denying the Commissioner's motion for relief from the bar date is "excusable neglect." Bankruptcy Rule 9006(b)(1) provides that:

> when an act is required or allowed to be done at or within a specified period by these rules or by a notice given thereunder or by order of court, *the court for cause shown may at any time in its discretion* (1) with or without motion or notice order the period enlarged if the request therefor is made before the expiration of the period originally prescribed or as extended by a previous order or (2) *on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect.* (Emphasis added).

In this case the Commissioner asks the court to review on two grounds. First, the Commissioner contends that the Bankruptcy Court did not apply the "excusable neglect" standard, but rather applied the bar date as a statute of limitations. The Commissioner argues that this was a clear error of law mandating remand so the Bankruptcy Court can apply the correct legal standard. Alternatively, if this court determines that the Bankruptcy Court did, in fact, correctly apply the "excusable neglect" standard, the Commissioner contends that the Bankruptcy Court abused its discretion. In that case, the Commissioner requests a reversal, or a remand so that further evidence can be presented relevant to the "excusable neglect" inquiry.

### B. *The Standard of Law Applied By The Bankruptcy Court*

The Commissioner's first argument is that the Bankruptcy Court did not apply the "excusable neglect" standard to the facts, but instead considered the October 31, 1986 "bar order" to be a "statute of limitations." The Commissioner cites the following exchange on the record:

> MR. OGILIVIE: Now, if the—if the—a motion had been filed, as perhaps it should have been filed, before October 31st, then it seems to me that the bar date would have been extended.

> But that's really all we're asking for at this point. We're not asking for anything different than we would have asked back in October.

> THE COURT: Except that what you're doing here is you're asking for in a tort claim a claimant asking the defendant to waive the statute of limitations. That's what you're asking.

> If anybody can understand that as lawyers any better than understanding the

situation here, this is what you're asking. The plaintiff wants a shot at the defendant even though the defendant has got the statute of limitations going for him.

MR. OGILVIE: I don't believe that the —a bar date has that effect. I think the rule says it can be extended for cause and I think we have cause here.

THE COURT: Well, you have cause.

Record on Appeal, Exhibit 16, p. 41, lines 4–23. Since a bar date does not operate as a statute of limitation—because unlike a statute of limitation, a showing of cause before the expiration and excusable neglect after expiration can alter it—the Commissioner contends that the Bankruptcy Court made an erroneous conclusion of law. Thus, the Commissioner argues that this court should remand for application of the correct legal standard.

As First Software correctly points out, however, this passage is taken out of context. After reading the entire transcript of the hearing, it appears that the Bankruptcy Court was merely attempting to illustrate by analogy to counsel the difference between asking for an extension to file a claim before the bar date had run, and asking for an extension when the claim was already untimely.

Indeed, other exchanges in the transcripts indicate that the Court was aware of the standard and its ability to exercise discretion. For example, when the attorney for First Software addressed the court, he began by saying:

MR. FLETCHER-HILL: The standard by which relief from the bar date is to be judged is excusable neglect.

Exhibit 16, p. 28 lines 9, 10.

In addition, when counsel for the plan sponsor addressed the Court, he also reiterated the fact that the Court must apply the "excusable neglect" standard. Counsel said the following:

MR. HOORT: ... I think that the Commonwealth's position ought to be considered in the light of the consistent practice in this district, going back to at least the Blizzard of 1978 opinion which Judge Glennon wrote, where if there was ever a case of excusable neglect, I think

that was probably about as high as its risen. And the rule in this district has been very clear that there is, basically, no excuse for missing a bar date if you have notice of it.

Id. at 35 lines 11–20.

The court did not challenge the assertion that excusable neglect was the standard. The court did, however, attempt to clarify the Court's discretion with respect to the Commissioner's motion.

THE COURT: Would you say that this Court has the discretion within which to allow the extension of the bar date? Is it strictly a discretionary matter with this Court?

MR. HOORT: If the Commonwealth had come to the Court in advance of the bar date having expired, saying we're in the process of assessing; we're not certain what amount is going to be; we'd like an extension as opposed to filing of a contingent claim, I think the answer to that, your Honor, would be yes.

But coming after the fact on the date of the confirmation hearing, now requesting a nunc pro tunc extension so that they can file a fairly substantial claim, I would say no.

THE COURT: I have no discretion in the matter?

MR. HOORT: I would think that, under the circumstances, your Honor, that the Commonwealth is not presented anything close to a situation—

THE COURT: I have no discretion in the matter.

MR. HOORT: I would think that, your honor. And if I may rephrase that, I think your Honor has infinite discretion. I would think that the circumstances that the Commonwealth has voiced did not provide a basis for granting the relief they've requested.

THE COURT: I'll have to remind my wife that I have infinite discretion.

Id. at 37–38.

Finally, in ruling that the Commissioner's motion was denied, the Court indicated that it was familiar with the relevant case law. As the Court stated:

COURT: ... I very, very reluctantly deny the motion to extend. I believe that I probably have little choice based upon the—what other courts found.

*Id.* at 209, lines 1–3.

The Bankruptcy Court did not state the standard it was applying, nor did it specifically discuss the factors it considered in reaching its ruling. Nevertheless, the Court's mention of the statute of limitations does not indicate the standard applied. Rather, it appears that the Court was familiar with the case law and the relevant standard of review, but declined to exercise its discretion to extend the deadline in this case. Therefore, a remand to apply the excusable neglect standard is not appropriate in this case.

### C. *Analysis Under the Excusable Neglect Standard*

Since the Bankruptcy Court applied the appropriate standard of law, the court must now consider the Commissioner's contention that the Bankruptcy Court's denial of its motion was an abuse of discretion under the excusable neglect standard. The parties in this case agree that this court should review the Bankruptcy Court's decision for an abuse of discretion. This standard of review is analogous to an appellate court's review of a trial court's exercise of discretion in a Fed.R.Civ.P. 60(b) motion.[1] Notwithstanding the parties' agreement, this court has also considered the Commissioner's motion for relief under the doctrine of excusable neglect *de novo.* Since the court finds that the Bankruptcy Court's decision was not only reasonable, but it was also correct, it does not matter whether the Bankruptcy Court's decision is reviewed for abuse of discretion or *de novo.*

■ Although the Court of Appeals for the First Circuit has not had an occasion to discuss the meaning of excusable neglect under Bankruptcy Rule 9006(b), several other courts provide useful analysis. The burden of proving circumstances constituting excusable neglect is on the party re-questing the extension. *In re O.P.M. Leasing Services,* 35 B.R. 854, 864 (Bkrtcy.S.D. N.Y.1983). As the Court of Appeals for the Eleventh Circuit stated, "[c]ourts have interpreted 'excusable neglect' under Rule 9006(b) and its identically worded predecessor, Rule 906(b), as requiring the movant to show that 'the failure to timely perform a duty was due to circumstances which were beyond the reasonable control of the person whose duty it was to perform.'" *In re South Atlantic Financial Corp.,* 767 F.2d 814, 817 (11th Cir.1985), *cert. denied sub nom. Biscayne 21 Condominium Inc. v. South Atlantic Financial Corp.,* 475 U.S. 1015, 106 S.Ct. 1197, 89 L.Ed.2d 311 (1986). Although some courts have maintained that "[t]he standard of 'excusable neglect' is a flexible one, ... an application relying upon 'excusable neglect' must cite 'circumstances that are unique or extraordinary.'" *In re O.P.M.,* 35 B.R. at 866.

Factors that may be considered in determining the existence of excusable neglect include: "(1) the adequacy of the notice provided; (2) the source of the delay and the sophistication of the creditor; and (3) the prejudice, if any, that will inure to the debtor should the objection be allowed." *Id.* But see *In re South Atlantic Financial,* 767 F.2d at 818 (although some courts examine the prejudicial effect of a late filing in determining whether excusable neglect exists, this circuit will look only at the movant's actions and reasons). In addition, some courts have looked at whether the creditor was misled or reasonably relied on the debtor's actions or assertions, thereby causing a late filing. *See In re Job–Site Industries,* 78 B.R. 335 (Bkrtcy.S.D.Fla. 1987); *In re Norris Grain Co.,* 81 B.R. 103 (Bkrtcy.M.D.Fla.1988).

Applying these standards, a court has held that a creditor who filed his claim three days late because of his failure to mail it to the proper address did not demonstrate excusable neglect. *In re Undergound Utility Construction Co.* 35 B.R.

---

**1.** Fed.R.Civ.P. 60(b) states in pertinent part: On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for ... mistake, inadvertence, surprise, or excusable neglect.

# 716

588 (Bkrtcy.S.D.Fla.1983). Similarly, counsel's reliance on misinformation from a bankruptcy court clerk regarding his duty to file a proof of claim did not constitute excusable neglect. *In re Oakton Beach & Tennis Club Real Estate Limited Partnership,* 9 B.R. 201 (Bkrtcy.E.D.Wisc. 1981). *See also In re Horn Construction & Maintenance, Inc.,* 32 B.R. 87 (Bkrtcy.S.D.Ala.1983), ("misunderstanding" between a creditor and its lawyers which caused its late filing of a proof of claim did not amount to "excusable neglect."); *In re Gem Rail Corp.,* 12 B.R. 929, 931 (Bkrtcy.E.D.Pa.1981) (creditor's failure to obtain records with which to file timely proof of claim was not excusable neglect where there was no showing by creditor that records could not easily have been obtained).

On the other hand, "courts have been most willing to find excusable neglect where the movant failed to comply with the bar date because, through no fault of its own, it had no notice of that date." *In re South Atlantic Financial,* 767 F.2d at 818; *In re Arrow Air, Inc.,* 75 B.R. 375 (Bkrtcy.S.D.Fla.1987). *See also In re Pine Associates, Inc.,* 35 B.R. 49 (Bkrtcy.D.C.Conn. 1983) (excusable neglect established where debtor failed to list creditor so that creditor did not receive notice by mail and lacked actual knowledge of bar date). In addition, a court allowed an untimely proof of claim in a case in which the creditor was unaware his claim was disputed and misled to believe it was properly filed. *In re Job–Site Industries,* 78 B.R. 335. *See also In re Norris Grain Co.,* 81 B.R. 103 (Bkrtcy.M.D.Fla.1987) (IRS allowed to file late claim for taxes owed since it relied on debtor's original assertion that debtor's tax liability was zero).

■ Thus, although courts disagree on the factors that should be considered, an all encompassing analysis would ask 1) was the notice adequate; 2) was the failure to timely file a proof of claim due to circumstances which were beyond the reasonable control of the person whose duty it was to perform; 3) did the debtor mislead the creditor; and 4) what prejudice, if any, will inure to the debtor.

## 1. *Notice*

■ As previously stated, Ms. O'Neil asserts in her affidavit that she never received notice of the bar date. Although the Commissioner originally argued on appeal that the record fails to show unambiguously that notice of the bar date was timely given, (*see* Appellant's Brief at 16), it is now clear that someone at the Department of Revenue received the notice on September 30, 1986. *See* Appellant's Supplemental Brief at 2. This new information does not change the analysis on review since it appears that the Bankruptcy Court assumed that notice of the bar date was properly given to the Commissioner. The colloquy with the Bankruptcy Court on this issue suggests that the Commissioner admitted that someone at the Department of Revenue, in fact, received the notice.

> THE COURT: Can you tell me whether or not the Commissioner was aware of the bar date? Was notice of the bar date served upon the Commissioner at the time that everyone else was served?
> MR. OGILVIE: Your Honor, we don't deny that. I don't know where ...
> THE COURT: I'm just asking whether or not you ...
> MR. OGILVIE: As far as I know, the Debtor has said it was served and we can't deny that. We don't admit it was, but we can't deny it. I don't know where it was served, or when or how. We can't admit and we can't deny. *I assume it was received by someone.* (Emphasis added).

> \* \* \* \* \* \*

> MR. OGILVIE: Now of course, *it may be true that there was a failure of communication on the part of the Commissioner and that someone in the agency got notice of the bar date and didn't contact the auditor. That is quite possible.* (Emphasis added).

*Id.* at 22–23, lines 21–24, 1–8; 26, lines 3–7. Thus, given that the Bankruptcy court appears to have concluded that notice was received, and it is now evident that it was,

the Bankruptcy Court clearly did not abuse its discretion by denying an extension due to any alleged lack of notice.

### 2. *Beyond Reasonable Control*

Notice was received by the Commissioner, but it was not received by Ms. O'Neil. The Commissioner argues that it is crucial that Ms. O'Neil did not receive notice since she was the person whose duty it was to calculate the sales tax claim. Moreover, the Commissioner claims that her failure to file a timely proof of claim was "due to circumstances beyond her control". More specifically, the Commissioner claims that the audit was delayed because First Software was given an extension to produce the resale certificates. This delay was within First Software's control.

In response, First Software argues that the fact that Ms. O'Neil, the department auditor, had no personal notice of the bar date has no impact on whether the Commissioner had actual notice sufficient to require him to file a claim or to request an extension of the bar date. As First Software argues, the Commissioner on appeal attempts to portray Ms. O'Neil as "the person whose duty it was perform," and the failure of anyone in her agency to inform her of the bar date as "beyond her reasonable control." First Software correctly points out, however, that Ms. O'Neil was not the only person responsible for filing any proof of claim or for the ultimate disposition of the Commissioner's tax claim against First Software. In addition, the issue is not whether the failure to timely file a proof of claim was due to circumstances beyond Ms. O'Neil's control, but whether it was due to circumstances beyond the Commissioner's control.

Thus, First Software argues that the reason why Ms. O'Neil, or any other person, did not file a proof of claim on behalf of the Commissioner is because internal, or unexplained mistakes delayed the necessary action. Prevention of such mistakes, First Software argues, was clearly within the control of the Commissioner, and was not excusable.

First Software's position is strongly supported by the case law. Courts do not allow for excuses based on internal office mistakes. *See e.g., In re Horvath*, 20 B.R. 962, 966 (Bkrtcy.S.D.N.Y.1982) ("a breakdown of internal procedures as cause for delay in seeking an extension of time *nunc pro tunc* to object to discharge is not to be considered beyond reasonable control of a sophisticated ... creditor"); *In re Biddy*, 7 B.R. 50, 57 (Bkrtcy.N.D.Ga.1980) ("Where a litigant's own internal procedures are the cause of a failure to comply with proper legal procedures courts generally refuse to grant relief from the consequences of the lack of compliance."); *In re Horn Construction & Maintenance, Inc.* 32 B.R. 87, 89 (Bkrtcy.S.D.Ala.1983) (a misunderstanding between a creditor and its lawyers which caused the later filng of a proof of claim did not constitute excusable neglect); *In re Gem Rail Corp.*, 12 B.R. 929, 931 (Bkrtcy.E.D.Pa.1981) (creditor's failure to obtain records with which to file a timely proof of claim does not constitute excusable neglect absent a showing by the creditor that the records could not have been easily obtained); *In re Underground Utility Construction Corp.*, 35 B.R. 588, 589 (Bkrtcy.S.D.Fla.1983) (creditor failed to demonstrate excusable neglect for filing a proof of claim three days late, where the untimely filing was the result of the creditor's failure to mail his claim to the proper address.). In the context of Fed.R.Civ.P. 60(b) *see e.g., Greenspun v. Bogan*, 492 F.2d 375, 382 (1st Cir.1974) (denying a motion to reopen judgment where movant had actual notice which "due to clerical error" failed to reach the proper desk.); *Picucci v. Town of Kittery*, 101 F.R.D. 767 (D.Me. 1984) (mere mistake in counsel's office procedure is not excusable neglect under Fed. R.Civ.P. Rule 60(b)).

Therefore, since notice was adequately given to someone in the Department of Revenue, it appears that failure to timely file a proof of claim was due to circumstances within the reasonable control of the Commissioner and was not excusable.

### 3. *Fraud or Misleading Acts*

Despite the fact that notice to the Department of Revenue was given, the Com-

missioner also attempts to demonstrate excusable neglect by claiming that First Software fraudulently concealed the bar date from Ms. O'Neil, and thus misled the Commissioner. Under the former Bankruptcy Act, fraudulent concealment of the six month statute of limitations was grounds for filing a late claim. *Walsh v. Lockhart Associates,* 339 F.2d 417 (5th Cir.1964). The Commissioner contends that fraudulent concealment of the bar date should similarly excuse a late filing of a proof of claim. In addition, if a creditor reasonably relies on actions taken by the debtor, some court have found cause or excusable neglect to extend the deadline for filing proofs of claim. *See In re Job Site Industries Inc.,* 78 B.R. 335 (Bkrptcy.S.D.Fla. 1987) (Reasonable reliance upon its participation in the bankruptcy proceeding, coupled with the failure of the trustee to advise creditor that his claim was disputed demonstrated excusable neglect for filing a late proof of claim); *In re Norris Grain Co.,* 81 B.R. 103 (Bkrptcy.M.D.Fla.1987) (IRS entitled to an extension of time since it relied upon the debtors' erroneous assertion that no tax would be due).

The Commissioner admits that there is no direct evidence that First Software intentionally concealed the bar date from Ms. O'Neil. Nevertheless, the Commissioner argues that it is significant that First Software caused its employees to continue to work closely with Ms. O'Neil on the audit after a bar date was established. Moreover, Ms. O'Neil was delayed in concluding her audit because she extended the date to enable First Software to file exemption documentation that they previously did not submit.

Finally, the Commissioner points out that Ms. O'Neil took active precautions to protect the sales tax claim from the only legal threat known to her, the upcoming expiration of the statute of limitations, by requesting and obtaining a voluntary waiver from First Software's president. The Commissioner argues, "[i]f First Software intended to raise the 'bar order' against the sales tax claim, Mr. Faulk was the one person in a position to so inform Miss O'Neil directly. His silence raises a strong suspicion of active concealment, as the Bankruptcy Court pointed out." Appellant's Brief at 18. Thus, the Commissioner contends that it is reasonable to assume that Ms. O'Neil relied upon the actions of First Software and assumed the Commonwealth's claim remained valid during the course of the audit.

Indeed, the record indicates that the Bankruptcy Court believed the Commissioner had been misled to a certain extent. At one point in the Court's questioning of First Software, the Court expressed concern that First Software's agreement to extend the audit completion date implied an extension of the bar date:

> THE COURT: But didn't your simple actions intimate that? Why did you—on and after the bar date, as soon as the bar date went by, the next morning at nine o'clock, why didn't you just tear up all your paperwork with reference to the Commonwealth? Say, hey boy, don't bother us anymore. We'll see you later. We don't care what the bottom line is anymore. You're barred.

Exhibit 16 at 30, lines 16–23. In addition, in its ruling from the bench the Court stressed that:

> THE COURT: ... I believe, quite frankly, that the Debtor were almost went out of its way to lull the representatives of the Commonwealth into believing that they were really working on a bottom line deal and that the parties were going to agree that this was it and they were going to submit it to the Court for approval. That I am bothered extremely by that.

*Id.* at 209, lines 10–17. Thus, the Commissioner argues that Ms. O'Neil's failure to timely file a proof of claim was due to circumstances beyond her control, concealed by First Software, and therefore excusable.

In response, First Software asserts that the "excusable neglect" standard looks to the actions of the moving party, not the debtor. *See In re Arrow Air,* 75 B.R. at 377 ("Excusable neglect ... means that the failure to act was due *solely* to matters

beyond movant's control.") (Emphasis added.) Thus, the fact that First Software employees did not personally inform Ms. O'Neil of the bar date is irrelevant.

■ Even if misleading acts by the debtor could be considered, First Software asserts that there is absolutely nothing in the record to substantiate the Commissioner's insinuations that First Software deliberately deceived the Commissioner's representatives. Moreover, First Software contends that even if First Software was aware of any bar date for filing a proof of claim, there was no duty on the part of anyone from First Software to make sure that the Department of Revenue was aware of such a date, aside from serving notice, which was done. In *In re Elmer Jackson*, 98 B.R. 738 (Bkrtcy.D.Md.1986), for example, a creditor failed to file a timely proof of claim in a Chapter 11 proceeding. Two weeks before the running of the bar date, counsel for the creditor wrote to the debtor's counsel requesting information as to the status of the bankruptcy proceeding. Applying the excusable neglect standard of Rule 9006(b)(1), the court stated:

> Debtor's then-counsel did not respond to the letter, arguing in his memorandum that he had no obligation to make any such response. It may be noted that all of the information as to the status of the case was readily available in the office of the Clerk of Court ... Debtor's counsel made no representation of any kind to [creditor's] counsel ... Debtor's counsel did nothing to deter [Creditor's] counsel from filing a timely proof of claim.

*Id.* at 740. The court went on to find that the failure of the debtor's counsel to respond to the creditor counsel's letter did not warrant a finding of excusable neglect:

> There has been no showing of any reason for the court to exercise its extraordinary power to extend the deadline beyond the procedural deadline. Procedural deadlines are a fact of life in bankruptcy, particularly in view of the mandate of both Congress and the Supreme Court that the objective of expeditious and eco-

nomical administration of bankruptcy estates is one of the chief purposes of bankruptcy law.

*Id.* at 742.

The cases discussed by the Commissioner in his Supplemental Brief are also distinguishable from the case at bar. Indeed, in *In Re Norris Grain Co.*, 81 B.R. 103, the court cited many of arguments that First Software presented in its brief. In *Norris*, the IRS sought to have a late proof of claim for the debtor's unpaid 1984 taxes, considered an amendment to a timely proof of claim filed for interest based upon late payment of 1984 taxes. In addition, the IRS requested an extension for filing a proof of claim for the debtor's 1985 unpaid taxes. Before analyzing the facts before it, the court discussed the purpose of bar dates. As the court stated:

> The bar date for filing proofs of claim in Chapter 11 cases is a mechanism intended by Congress to provide the debtor and its creditors with 'finality'.... For this reason, courts look upon the bar date as being ... in the nature of a statute of limitations which must be strictly observed ... The congressional goal of finality precludes the Bankruptcy Courts from 'finding exceptions to these rules in the supposed interest of equity.' ... Thus, although aware that a bar date, like other limitations periods, would inevitably cause hardship on those who failed to act timely, Congress decided that the goal of finality is of greater benefit to the public than any benefit derived from allowing individual exceptions to the bar date. (citations ommitted).

*Id.* at 106. The court went on to explain that "courts have generally refused to grant relief where the creditor's own internal procedures are the cause of its failure to file timely proofs of claim." *Id.* at 108. Moreover, the court added that "in this regard, the IRS 'is to receive no special considerations in determination of its late claims.'" *Id.* The court then concluded that, "because the failure of the IRS to file a timely claim was due to its own internal problems, it is not entitled to an extension of time to file its claim for 1984 taxes

under the doctrine of 'excusable neglect.'" *Id.* at 109. In addition, the court held that the claim for the unpaid 1984 taxes did not arise out of the same transaction as the original timely filed IRS claim and could not, therefore be considered an amendment. The claim was therefore barred since it was not filed before the bar date.

On the other hand, the court in *Norris* held that the IRS could have an extension for filing a proof of claim for the taxes owed in 1985 by the debtor. Here the court found that the underlying facts warranted such an extension. As the court stated,

This is based upon the testimony which revealed that the debtors filed an application in 1985 for an extension of time in which to file its 1985 tax return and indicated a tentative tax due of zero. The IRS, in failing to file a claim for 1985 income taxes, relied upon the debtors' assertion that no tax would be due for 1985.

*Id.* at 109. Thus, the court concluded that the failure to timely file was based upon excusable neglect.

In this case, however, the Commissioner's failure to file a proof of claim was not due to a reliance on any assertion by First Software. Even though First Software did not mention the bar date to Ms. O'Neil when she sent her final assessment in November, by that point the bar date had already passed. First Software may have assumed that the Commissioner had filed an estimated claim on October 31, 1986, or had asked for an extension prior to October 31 since the audit was still on-going. None of First Software's actions would have prevented such actions by the Commissioner; nor did any of First Software's actions discourage the Commissioner from protecting his position. Rather, it seems like Ms. O'Neil's failure to act was directly related to the fact that she personally had not received notice. In contrast, the IRS in *In re Norris* had received notice, but chose to ignore it based on its reliance on the debtor's assertions.

Thus, although the Bankruptcy Court acknowledged that First Software may have "lulled" the Commonwealth, the court apparently did not find First Software's actions fraudulent, or designed to deliberately mislead the Commissioner. Since the record does not clearly indicate otherwise, it does not appear that the Bankruptcy Court abused its discretion by not extending the bar deadline for fraudulent concealment, or misrepresentation. Indeed this court concludes that there was no fraudulent concealment in this case.

### 4. *Prejudice*

Finally, the Commissioner argues that the Bankruptcy Court failed to consider the possible prejudice to others of allowing its motion for an extension. Although at least one Circuit has declined to consider this element, *see In re South Atlantic*, 767 F.2d 814 (11th Cir.1985), other courts have included consideration of the prejudice resulting from a late claim on the debtor and other creditors. *See In re O.P.M. Leasing*, 48 B.R. 824 (S.D.N.Y.1985); *In re Murphy*, 1 B.R. 736 (Bkrtcy.S.D.Cal.1979). The Commissioner also cites *Coady v. Aguadilla Terminal, Inc.*, 456 F.2d 677 (1st Cir. 1972), a First Circuit case in which prejudice is mentioned as an element of "excusable neglect" in the context of whether a party should be excused under Fed.R.Civ.P. 6(b) for its failure to post a cost bond.

The Commissioner stresses that the court must focus on the possible prejudice caused by the *delay* in presenting the sales tax claim, rather than the possible prejudice caused by requiring First Software to *pay* the claim. Since the record is silent on this point, the Commissioner contends that this court should assume that the Bankruptcy Court found that the late filing of the sales tax claim would not prejudice any party in interest. If this case is remanded, the Commissioner contends that testimony should be received on this factor.

In response, First Software argues that even if prejudice is a relevant factor, it does not help the Commissioner meet his burden of proving excusable neglect. First Software contends that the Commissioner cannot discount a $117,951 *priority* claim as causing no prejudice to the debtor or other creditors. As First Software ex-

plains, "[t]he Commissioner's unexcused delay in presenting the claim resulted in the formulation of a plan and the creation of certain reasonable expectations on the part of the third party funder of the plan, as well as First Software's certain unsecured creditors who received preferred stock in the reorganized First Software under the terms of the plan." Appellee's Brief at 21–22.

Counsel for the plan sponsor informed the Bankruptcy Court of the prejudice that might result if the Commissioner received an extension:

> MR. HOORT: ... And the second position, your Honor, or second point I'd like to bring to the Court's attention is the fact that it is not strictly a relationship between the Debtor and the would-be claimant, but, rather, they do have significant third-party rights involved here. There is a very complicated plan which has gone through a very complicated series of negotiations—
>
> THE COURT: It may well be that the plan will fail if that's the situation. Everybody takes their chances when they come into this Court.
>
> MR. HOORT: That is—the point, though, your Honor, is that it is precisely because of the fact that third-party rights are involved, not only the party proposing the plan but the rights of all others creditors and whatever distribution they'd be entitled to share in, that the bar date has particular significance and that all parties are entitled to rely on it.

*Id.* at 36–37.

Thus, it appears that the Bankruptcy Court considered the likely prejudice to others when it denied the Commissioner's motion.

## III. CONCLUSION

The Bankruptcy Court was not explicit in stating its reasons for denying the Commissioner's motion for relief from the bar date. Nevertheless, the record contains sufficient information for the Bankruptcy Court to have found the facts implicit in its decision: 1) notice was adequate; 2) the failure to file was caused by an internal mistake in the Department of Revenue; 3) though it might have prevented the late filing by personally informing Ms. O'Neil of the bar date, First Software had no duty to do so; 4) First Software did not perpetrate a fraud or improperly cause the Commissioner to miss the October 31, 1986 deadline; 5) the Commissioner was a sophisticated creditor, having previously filed other proofs of claim; and 6) prejudice would result from extending the filing deadline for the Commonwealth. The majority of cases directly on point suggest that "excusable neglect" is a rigorous standard which rarely applies when notice is adequate. Thus, the Bankruptcy Court did not abuse its discretion in denying the Commissioner's motion, and in fact reached the correct result. Accordingly, the decision of the Bankruptcy Court is hereby AFFIRMED.