**In re A.H. ROBINS COMPANY, INC., Debtor.**

**Bankruptcy No. 85–01307–R.**

United States Bankruptcy Court, E.D. Virginia, Richmond Division.

July 2, 1991.

Frederick J. Hinton, Smith, Moncure, Blank, Issaacs & Hinton, Richmond, Va., Jon S. Hutcheson, Smith, Hutcheson, and Dunbar, Waynesville, Mo., for plaintiff.

Linda J. Thomason, Dalkon Shield Claimants Trust, Richmond, Va., for defendant.

## MEMORANDUM OPINION

BLACKWELL N. SHELLEY, Bankruptcy Judge.

This matter comes before the Court upon the motion of Major Alice Anderson to allow her claim to be filed out-of-time or, alternatively, to allow late filing of her claim pursuant to 50 U.S.C.Appx. § 525, the Soldiers and Sailors Relief Act. The Dalkon Shield Claimants Trust (the "Trust") opposed the motion on the grounds that the Soldiers and Sailors Relief

Act does not "toll" the Bar Date.[1] The matter was heard on March 1, 1991, as part of an extended hearing on numerous objections to the Trust's recommendation that certain claims be treated as late claims under the Plan.

## STATEMENT OF FACTS

This case began on August 21, 1985, when A.H. Robins Company, Inc. ("Robins") filed for relief under Chapter 11 of the Bankruptcy Code. Early in the case, this Court set April 30, 1986, as the deadline (the "Bar Date") for filing claims against Robins. The order setting the Bar Date also established a worldwide notification campaign that Robins was required to undertake to give notice of the Bar Date to all known and unknown but potential Dalkon Shield claimants. *See Vancouver Women's Health Collective Society v. A.H. Robins Co., Inc.,* 820 F.2d 1359 (4th Cir. 1987) (upholding the foreign notification campaign). The direct advertising campaign used in the United States was not challenged. A plan of reorganization (the "Plan") was eventually developed and approved by approximately 95% of the eligible Dalkon Shield claimants who voted. The Plan was approved by this Court by order entered July 25, 1988. In December 1989 the Plan was consummated and the Trust received more than $2.2 billion in cash to administer and pay Dalkon Shield claims.

Pursuant to the guidelines set forth in the Claims Resolution Facility (the "CRF") as incorporated in the Plan, the Trust is currently reviewing and paying timely filed claims. The Trust is also reviewing claims filed after the Bar Date to determine if, under the Plan, they should be treated as timely. This procedure is more fully explained later in this Opinion. Anderson's

motion is similar to, and procedurally was treated the same as, an objection to a recommendation from the Trust that the claim remain late. For the purposes of the hearing on Anderson's motion, the parties stipulated to the following facts:

Anderson, a nurse, has been on continuous active duty with the United States Army since November 1978. Anderson had a Dalkon Shield inserted in January 1972, prior to her entry into military service, and removed in May 1979. Also in May 1979 Anderson underwent a total abdominal hysterectomy and was diagnosed as having several medical conditions which were possibly Dalkon Shield related. From June 1983 through September 1989 Anderson was stationed in Hawaii. In October 1989 Anderson's mother informed her about the Dalkon Shield claims based on a newspaper article the mother had just read. It took Anderson two months to get her medical records, and she filed her claim in January 1990. Anderson did not know about the Dalkon Shield Trust, claims, or any litigation prior to the communication from her mother, and she is not now nor ever has been a person who reads newspapers or magazines.

## CONCLUSIONS OF LAW

Bankruptcy Rule 3003(c)(3) provides for the Court in a Chapter 11 proceeding to fix the time within which proofs of claim or interest may be filed. The Court may for cause extend the time. (Bankruptcy Rule 9006(b)(1)). If extension is requested after expiration of time, it shall be done when the failure to act timely was the result of excusable neglect. *See In re First Software Corp.,* 97 B.R. 711, 715 (D.Mass.1988) (The applicable legal standard for granting a motion for relief from the Bar Date is excusable neglect.)[2]

---

1. Originally, the Trust also argued that Anderson did not even have a late claim because it was filed after the consummation date of the Plan. This argument was abandoned due to the Trust's later decision to continue accepting late claims.

2. The excusable neglect standard in bankruptcy should not be confused with the standard applied in motions filed pursuant to Fed.R.Civ.P.

60(b). In another matter in this case the Fourth Circuit recognized that the standards were different and held that, under certain circumstances, claimants may file motions for relief from judgment pursuant to Rule 60(b) on appeal in the district court in which a broader excusable neglect standard would apply. *In re A.H. Robins Co., Inc.,* 862 F.2d 1092, 1097 (4th Cir.1988).

It is to be noted that the bankrupcy rule with respect to Chapter 7 dictates a different time limitation for filing a proof of claim. The time limit is set by Rule 3002(c) at 90 days after the date first set for the meeting of creditors. However, one exception to that rule provides that in the interest of justice and if it will not unduly delay the administration of the case, the time may be extended for the filing of a proof of claim by an infant or incompetent person. Rule 9006(b)(3) permits enlargement of time under Rule 3002(c) to the extent and under the conditions stated in that rule. That extension would permit the late filing of a proof of claim by infants or incompetents in a Chapter 7 case.

As indicated, the rules relating to extensions of time are different in a Chapter 11. First the date is set by the Court and not by statute or rule. Secondly, it is not subject to the permissive extension even for the benefit of infants or incompetents. *See In the Matter of Chicago, Rock Island and Pacific Railroad Co.*, 788 F.2d 1280 (7th Cir.1986) (parent's failure to file timely claim on behalf of minor child was not grounds for changing status of claim to timely). However, as indicated, Rule 9006(b)(1) would allow an extension of time when the failure to act by the bar date was the result of excusable neglect.

It is significant that the rules vary between Chapter 7 and Chapter 11. In Chapter 7 the assets are liquidated and distributed and the debtor is not reorganized. The creditors are paid, if at all, by the trustee in bankruptcy from the liquidated non-exempt assets. Post-petition assets are not subject to claims discharged in bankruptcy. If it is a corporate debtor, however, it generally ceases to exist principally because its debts continue to be non-dischargeable. 11 U.S.C. § 727(a)(1). If an individual, the debtor begins anew, unhampered by the debts discharged in the bankruptcy case. To the contrary, in a Chapter 11, although permissible, a debtor is not generally liquidated by a plan of reorganization. The debtor continues to exist and, as will be shown, a need to place time constraints on claim filing becomes acutely obvious.

The requirement of a Bar Date in Chapter 11 enables the debtor or the proponent of a plan of reorganization to establish the universe of claims with which it must deal and the amount of those claims. In a confirmation hearing on the plan of reorganization mandated by 11 U.S.C. § 1128, the Court must find that the requirements of confirmation set forth in § 1129 have been met. In short, for a plan to be feasible the debtor's ability to fund it must be determined prior to confirmation and the Court must find that the debtor is not likely to be liquidated or in need of further financial reorganization, unless proposed by the initial plan. *See* § 1129(a)(11). A voter in an impaired class of creditors who has not accepted the plan must receive as much under the plan as would be received if the debtor were liquidated under Chapter 7 of the Bankruptcy Code. *See* § 1129(a)(7)(A)(ii). In order for the plan to be fair and equitable to a dissenting class of unsecured creditors, no inferior class may receive any consideration until the dissenting class has been paid in full. Section 1129(a)(8); § 1129(b)(1); and § 1129(b)(2)(B). All of these conditions require the Court to make findings as to the amount of liabilities to each class of claimants and the debtor's worth. To serve these purposes, preliminary to the Plan confirmation hearing, the Court conducted an extensive estimation hearing on the value of the Dalkon Shield claim base.[3] To be certain that the fund available to Dalkon Shield claimants was adequate required a cutoff date by which claims were to be considered as timely filed. Without such a limitation of time, the estimation process would have been weakened to the point that the Trust fund might not have paid Dalkon Shield claimants in full while at the same time the Plan provided for unsecured creditors in other classes to be paid in full, and the inferior stockholder class would

---

**3.** This hearing was preceded by the worldwide noticing program to all prospective claimants directing that they file their claims by the Bar Date. *See Vancouver Women's Health Collective Society v. A.H. Robins Co., Inc., supra.*

have received a benefit under the Plan. The Court would have had difficulty in approving a Plan pursuant to § 1129(a) which differentiated between the general unsecured creditors class and the Dalkon Shield claimants class. Obviously, under § 1129(b) the Plan would have been unconfirmable if the Dalkon Shield claimants voted against the Plan and the Court found the claimants might not receive full payment.

Subsequent to the conclusion of the estimation hearing the Court conducted the hearing on approval of the disclosure statement filed in this case as required by § 1125(b). Annex 8 to the disclosure statement reflected the liquidation value of the company to be $1.611 billion, an amount less than the estimated value of the Dalkon Shield claims. The offers to acquire the debtor generated after the estimation hearing exceeded the liquidation value of the company. The offer accepted by the debtor-in-possession and approved at confirmation provided among other things for payment to the Trust of a sum equivalent to $2.475 billion over a reasonable period of time. This payment allowed the Court to find that the fund available to pay claimants was adequate. This finding served two purposes. First, the Court could have allowed a "cramdown" pursuant to § 1129(b) in the event any superior class, including the Dalkon Shield claimants, had dissented. Second, the affirmative vote of the Dalkon Shield claimants class was procured through the claimants' reliance on the Court's finding the fund was adequate.

The amount of the Dalkon Shield fund was established based upon the claim base that existed at that time. Any increase of that claim base created by an extension of the Bar Date would necessarily cause an increase in the number of timely claimants and a consequent increase in the amount needed to pay the timely claimants in full. Because the Trust has a limited fund, the possibility would then exist that the timely claimants would not be fully compensated.

The timely Dalkon Shield claimants voted for a plan which provided for full payment to them first and then to the payment of all late Dalkon Shield claimants who could not meet the test of timeliness set up by the Trust or allowed by the Court on an excusable neglect standard. *See* Plan Exhibit C., Claims Res.Fac. G15. These essential requirements for confirmation in this case necessitated the Bar Date limitation on the filing of claims. Without such a deadline the claim base was not susceptible to determination.[4]

■ Major Anderson is only one person and a variation in the total dollar amount of claims to include her claim would have little effect given the amount that the Court after the estimation hearing determined to be sufficient to satisfy the then known universe of Dalkon Shield claimants. However, to now allow this one claim to be added as timely due to an asserted violation of the provisions of the Soldiers and Sailors Relief Act would require the allowance of all who may be similarly situated to assert at this late date the right to timeliness. It might well be asserted that the spouses and children of these claimants should also be permitted timely status. This Court hesitates to portend all that might result if it were to rule in Anderson's favor on this issue. Obviously, the claim base would be enhanced and the trust would remain open *ad infinitum*.

Reorganization bankruptcy is different. The rules applicable thereto are different. There must be a finality to claim filing in order to effect the reorganization, whether an independent trust is set up to pay the claims, as in this case, or the surviving entity at confirmation arranges for the satisfaction of claims. In this case and most others, absent finality or the prospect thereof the Court could not make proper findings under § 1129(a) to confirm a plan of reorganization.

---

**4.** Claimants who timely responded to the bar date notice far exceeded the number of claimants the debtor expected to request inclusion in this case as a creditor. As of May 31, 1991,

there were approximately 38,000 late claimants. Even today late claims are being filed at a rate of several hundred a week. Invariably a great number ask to be considered timely.

The drafters of the Plan in this case were careful to attempt to offer protection to people who did not meet the deadline. They included in the Plan a reasonably liberal test to determine whether the Claimants Trust should refrain from objecting to late filed claims. The Plan also offers protection to late claimants in that funds remaining in the Trust after payment of expenses and timely claims will be paid to late claimants and any funds thereafter remaining would be distributed to all claimants *pro rata*. The Court was fully cognizant of these provisions in the proposed Plan at the estimation hearing. These provisions survived intact at the subsequent confirmation hearing.

Anderson has cited *Detroit Harbor Terminals, Inc. v. Kuschinski*, 181 F.2d 541 (6th Cir.1950), filed under the Bankruptcy Act of 1898, as amended, as authority for her position. In that case, at issue was a provision placed in the confirmation order limiting the time in which existing stockholders could exchange their stock. It came to the attention of the appellate court that the claimant (a stockholder) asserted he had no notice of the proceeding and was in the military service subject to the protection of the Soldiers and Sailors Relief Act. The appellate court did not decide that issue but, after affirming the district court's disallowance of late claims, granted that claimant the right to petition the district court for an order granting him the right to exchange his stock for stock in the reorganized company. A review of the Sixth Circuit's opinion reveals that issues of feasibility had already been resolved. The debtor knew the exact number of shares which were outstanding, the exact number which had not been turned in for redemption, and may have known the name of the stockholders who had failed to make redemption. If any monetary consideration was involved, and it appears not to be because only the exchange of stock was

discussed in the case, it would have been finite because the total number of outstanding shares were known to the debtor and would not have affected the feasibility determination by the Court.

*Detroit Harbor Terminals* is not apposite, and is distinguishable on the facts, and even if not, the Court declines to follow it. Here we have knowledge imputed to the claimant by the worldwide advertising campaign, and pursuant to the stipulations of counsel a knowledge of the use of the Dalkon Shield and a prebankruptcy injury possibly related to its use. There also exists a possibility of an infinite number of additional claimants limited to a finite pool of money established by a court estimation hearing. In *Detroit Harbor Terminals*, harm, if any, would be on the debtor to reissue more stock if necessary, and, to the extent the value of their shares was diluted, on the other shareholders. The rights of general creditors would be unaffected. In this case, however, the potential for harm is on the timely claimants who have complied with all requirements and who might have to give up a portion of their allowed claims should Anderson and others similarly situated prevail.

If the Court were to decide that this claimant is not bound by the Bar Date, would she not be bound by other aspects of the case? If she had waited and filed her claim after the Trust estate had been depleted, would she be entitled to ignore the continuing injunctions and proceed against the former debtor? Would Anderson be privileged to refrain from filing a claim and allowed to delay institution of a civil suit for tortious injury against Robins or its merger identity until years from now or after she leaves military service? Additionally, how long after her severance from the military would Anderson have in which to file her claim? [5]

In bankruptcy, generally, the plan of reorganization and the order confirming the

---

**5.** Unlike statutes of limitation, which are tolled by the Soldiers and Sailors Relief Act and begin to run again upon the party's separation from military service, bar dates do not involve a time period limitation. *See In re Miller*, 90 B.R. 317, 321–22 (Bankr.E.D.Tenn.1988), *aff'd.* 118 B.R. 76 (E.D.Tenn.1990). A bar date is a date certain. Once it is past, neither the Bankruptcy Code nor the Soldiers and Sailors Relief Act make provision for "resetting" it to accommodate individual parties to whom it did not apply. Would the applicable state statute of limitations be applied to the filing of such claims, or should the claimant have a time period equal to that

plan prohibit such action. In this case the Plan also prohibits such action, however, unlike most plans, it also makes provision for late claimants. In this case, particularly, no issue was resolved without consideration of there being unknown claimants. At the time of the establishment of the Bar Date and confirmation of the Plan, the Dalkon Shield users and those who had a cause of action arising out of its use were represented by a committee and by counsel.

To reopen this case would wreak havoc to the Congressional scheme to promote certainty and finality in reorganization cases. If the prohibition of the pursuit of claims outside of the reorganization case could be overturned by the action of a new group of claimants, it would undermine the intended fresh start provided to debtors in Chapter 11 proceedings. "The congressional goal of finality precludes the Bankruptcy Courts from finding exceptions to these rules in the supposed interest of equity." *In re Norris Grain Co.*, 81 B.R. 103, 106 (Bankr.M.D.Fla.1987) (citations omitted), *aff'd.* 1990 U.S.Dist. Lexis 17564 (M.D.Fla.1990).

Most importantly, Anderson is not being deprived of the right to file a proof of claim. She can and has done so. It is the dictates of the Plan that she be allowed to be at worst a late filed claimant and at best a timely filed claimant. The fact that she may have been deprived of the right to

vote against the Plan of reorganization which established the procedure is of no consequence given the vast majority of the affirmative votes (95%) in favor of the plan. Had she been a timely claimant voting against the Plan, pursuant to § 1129(a)(7)(A)(ii) the Court would have to find that what she was entitled to receive would be that amount she would receive if the debtor were liquidated under Chapter 7. This brings into focus again the need to have some finality to the filing deadline in order to determine that the funds made available to pay all claims are equal to or exceed the liquidation value of the debtor.

In order to provide for the payment of Dalkon Shield claims, the Plan established the Claims Resolution Facility to receive the trust funds and to distribute those monies to the qualified claimants pursuant thereto. The CRF, G. Guidelines 14 provides that meritorious compensation claims not time-barred shall first be paid in full. Subsequently, meritorious time-barred claims shall be administered and paid from the funds.[6] The CRF, G. Guidelines 15 established procedures for determining if a Late Claim should be considered on a par with a timely filed claim. The factors to be considered were set out in G. Guidelines 15(ii)(a)(1)(I), (II), (III) & (IV).[7] From the stipulations and arguments of counsel it is apparent that prior to the Bar Date the claimant was aware of the use of the Dal-

---

between the filing of the petition and the original bar date in which to file her claim? This Court can find no authorities which provide any guidance on this issue.

**6.** *Priorities Among Claims.* Claimants who have claims for compensatory damages which are meritorious and which are not time-barred shall have first call on the funds of the Trust. To the extent funds remain after all such claims are paid in full, meritorious compensatory damage claims which are time-barred shall then be administered and paid from the funds of the Trust..... CRF, G. Guidelines 14.

**7.** (ii). After the Consummation Date, the following procedures shall be used to determine whether Late Claims shall be entitled to consideration and treatment on par with timely-filed Dalkon Shield Personal Injury Claims ("Timely Claims"):
(a) Within a reasonable time after submission of a Late Claim for consideration, the Trust

shall seek to determine whether excusable neglect or other valid legal cause exists for treating and considering such Late Claims as and with Timely Claims. In undertaking this determination, the Trust may consider, *inter alia,* the following factors.
(I) whether the Late Claim is based upon injuries which first became manifest after the commencement of the Case or the bar date established by the Bar Order;
(II) whether the holder of the Late Claim had actual knowledge of the bar date established by the Bar Order;
(III) whether the holder of the Late Claim had actual knowledge of Dalkon Shield use prior to the bar date established by the Bar Order; and
(IV) whether the holder of the Late Claim acted diligently with respect to the Late Claim under the particular circumstances surrounding the Late Claim.
For purposes of this section, appropriate evidence of a first manifestation of injury subse-

kon Shield, manifested an injury, had the IUD removed, and she resided in the United States during the entire period prior to the filing of this case and continuing subsequently to the filing of her claim. The parties further stipulate that she was not aware of Robins' bankruptcy or the worldwide noticing program. Applying guidelines contained in the CRF document, the Trust declined to recommend timely recognition of the claim.

Because the facts as stipulated at the hearing reflect that Anderson had a manifestation of injury prior to the commencement of the case, and she was aware of the use of the Dalkon Shield as the intrauterine device, this Court finds the claimant's assertion of the lack of any knowledge of this case and the Bar Date limitation, in spite of the massive worldwide advertising campaign which previously has been determined to be adequate notice, is not sufficient to establish excusable neglect and grant her timely status under the dictates of the Plan or the Bankruptcy Rules.

For the reasons herein stated, this Court finds that the Soldiers and Sailors Relief Act, 50 U.S.C.Appx. § 525, does not act to toll the Bar Date, that Major Anderson's request that the claim be considered timely should be denied, and her claim should be allowed as a late filed claim.

The Court's decision that Anderson's claim should not be considered as timely does not preclude Anderson from attempting to assert her rights as a late claimant under the Soldiers and Sailors Relief Act in the event the Trust objects to payment of her late filed claim on statute of limitations grounds. The issue of whether the Soldiers and Sailors Relief Act might deprive the Trust of its right to raise a statute of limitations defense under the various options provided for in the Plan is not now before the Court and is not decided in this opinion.

An appropriate Order will issue.

quent to April 30, 1986, and either lack of actual knowledge of the bar date or lack of knowledge of Dalkon Shield use shall constitute "excusable neglect."