**In re SIESTA SANDS DEVELOPMENT CORPORATION, Debtor.**

**Bankruptcy No. 84–17–8P1.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Jan. 9, 1989.

Malka Isaak, Tampa, Fla., debtors.

Charles Ketchey, Tampa, Fla., for Jay Lancer.

---

## ORDER ON AMENDED OBJECTION TO APPLICATION FOR ALLOWANCE OF ATTORNEY FEES

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a confirmed Chapter 11 case and the matter under consideration involves an Application for Allowance of Attorney Fees filed by the law firm of Lancer & Vandroff, P.A., and an Amended Objection to same filed by Siesta Sands Development Corporation (Debtor). The Amended Objection to the Fee Application was scheduled for a final evidentiary hearing on August 24, 1988, at which time neither the Debtor nor the Debtor's former counsel of record attended the hearing although both applicants were represented by counsel, so were the principals of the Debtor, Mr. and Mrs. Corneau.

To place the issues raised by the Amended Objection into proper focus, a brief historical review of the facts as they appear from the record together with the procedural history of this case and particularly the matter under consideration should be helpful and can be summarized as follows:

On January 6, 1984, Roland and Yvette Corneau (Corneaus) and Tichenor & Linder Architects, Inc., filed an Involuntary Petition for Relief under Chapter 11 of the Bankruptcy Code against the Debtor. Roland and Yvette Corneau were and still are the only officers and stockholders of the Debtor and Roland Corneau was and as far as it appears still is the principal officer of the Debtor. The Debtor having failed to contest the Involuntary Petition, on February 6, 1984 this Court entered an Order for Relief and directed the administration of the estate of the Debtor under Chapter 11 of the Bankruptcy Code. On June 26, 1984, this Court entered an Order and authorized the Debtor-in-Possession to employ Mr. M. Jay Lancer, Esquire (Lancer) to represent the Debtor. At the time relevant, the Debtor was the owner of a large resort complex located in Sarasota, Florida which was yet to be completed. The complex was encumberred by several mortgages including a second mortgage held by Kalin Enterprises, Inc. It was apparent from the outset that if this Debtor was able to proceed to confirmation it would have to find a buyer who would purchase the complex and infuse the funds necessary to complete the development. In spite of numerous, unsuccessful attempts to sell the complex free and clear of liens, it was not until February 24, 1986 that Lancer filed a Motion and sought authority to sell the complex free and clear of liens to Mr. and Mrs. Corneau, the principals of the Debtor. The consideration for this proposed sale was, as stated in the Motion, $800,000 cash and a waiver of the claim of the Corneaus in the approximate amount of $1,500,000. In the meantime, the Debtor filed its original Disclosure Statement which was approved, as supplemented, on August 9, 1985. The confirmation hearing was scheduled to be held on October 21, 1985. The order approving the disclosure statement also fixed October 18, 1985 as the last date for filing all fee applications. In the interim, Barnett Bank of Manatee (Barnett), who held a first mortgage on the subject property, filed a Motion and sought relief from the automatic stay and so did Kalin Enterprises, Inc. In due course, both Motions have been granted without opposition.

The hearing to consider confirmation of the plan was continued several times. It

was not until June 2, 1986 when this Court granted the Motion to sell the subject property free and clear of liens. Based on this Order, on June 18, 1986, this Court entered an Order and confirmed the Plan.

It appears that the Corneaus were at all times represented by Ms. Malka Isaak (Ms. Isaak) who repeatedly urged Mr. Lancer to challenge the validity of the Kalin mortgage based on the claim of Ms. Isaak that the mortgage could be invalidated on some legal theory (Debtor's Exhibit 17). Lancer indicated his unwillingness to pursue any lawsuit on behalf of the Debtor (Lancer's Exhibit 11). It is without dispute that Mr. Lancer is acquainted with Mr. Kalin, the principal of Kalin. The fact of the matter is he represented Kalin Financial Services, an entity also controlled by Mr. Kalin, in connection with a Chapter 11 case involving Dakal Development Corporation, Case No. 84–2484. In that particular case, Mr. Lancer filed a Motion and sought relief from the automatic stay on behalf of Kalin Financial. It further appears that Mr. Kalin was and still is represented by Mr. Paderwaski who is the first cousin of Mr. Lancer. When Mr. Lancer initially filed an application to be appointed as counsel to represent the debtor-in-possession, he failed to disclose in his affidavit his previous connections with Mr. Kalin and his connection with Kalin Financial. The initial sale of the complex, the principal if not sole asset of the Debtor which was the basis for the plan of reorganization aborted primarily on the ground that the proposed purchase price was insufficient to satisfy the Kalin mortgage. On October 3, 1986 filed an emergency Motion and sought an order vacating the previous order which authorized the sale of the subject property free and clear of liens.

On November 3, 1986, Ms. Isaak filed an application to be appointed to represent the Debtor. However, no order was ever entered authorizing her employment but instead, on December 11, 1986, this Court entered an order and authorized the employment of Mr. Pelaez. In the interim, Ms. Isaak filed a Motion to Withdraw which was ultimately granted. In light of the unresolved status of the Kalin mort-

gage, it became evident that the original plan of reorganization could not be consummated. For this reason, the Debtor filed a Motion for leave to file an amended disclosure statement and amended plan of reorganization. These Motions were granted and on June 18, 1986, the last plan of reorganization was confirmed. This was only possible because all parties, including Kalin and a new lender, Caribank Mortgage Corporation (Caribank) who in the interim advanced funds to the Debtor in reliance of the original order of confirmation entered into an agreement and settled their differences. This settlement was approved by this Court on February 10, 1987.

Notwithstanding the original bar date to file fee applications, the law firm of Lancer & Vandroff did not file an application for allowance until January 20, 1987, or approximately two (2) years after the original bar date fixed by the court. The fee application was promptly challenged by the Corneaus and by the Debtor first on the basis that it was time barred; second, on the basis that they were not entitled to any fee because of an alleged conflict of interest of Lancer; and, third, because in any event the amount sought was excessive.

Thereafter, the parties embarked on extensive discovery. It was argued by the parties that the Court should consider initially only whether or not the fee application is time barred or should be still considered as timely under the circumstances. At the duly scheduled evidentiary hearing on this issue, this Court heard testimony of witnesses and on February 8, 1988 entered an order in which it determined first that because of the conduct of the Corneaus, Mr. Lancer was lulled into false security and in reliance on their promise to take care of his compensation, Lancer did not file a fee application. However, the Court also proceeded and determined that the amount of the fee to be awarded in spite of the fact that at the hearing no evidence was presented on the reasonableness of the fee sought. For this reason, the newly appointed counsel for the Debtor, Mr. Joel Treuhaft, who succeeded Mr. Pelaez, filed a Motion for Rehearing directed to the

Order which fixed the fee to be awarded to Mr. Lancer. For the reasons stated earlier, the Motion was granted and the portion of the Order which dealt with the determination of the reasonable fee was set aside and vacated. As a consequence, the matter was rescheduled for final evidentiary hearing to determine whether or not ·the fee application should be denied in toto because of alleged conflict of interest of Mr. Lancer and, if not, whether or not the fee sought is excessive. In this connection, it should be pointed out that Mr. Lancer, in his fee application sought $107,768 for fees and $3,500 as cost reimbursement.

■ It should be noted and has been noted at the outset of this case that an issue which was not raised by counsel for Lancer & Vandroff, P.A., nor raised on behalf of the Debtor, the undisputed fact that the Order of retention authorizing only Mr. Jay Lancer to represent the Debtor-in-Possession and there is no order in this record which authorized Lancer & Vandroff, P.A., to act on behalf of the Debtors and the only attorney who was authorized to represent the Debtor-in-Possession was Mr. Lancer and not the applicant, the law firm of Lancer & Vandroff.

This leads to the question whether or not the Order which authorized the employment of an individual attorney to represent the Debtor also authorized the employment of any partner or associate of the individual to act as attorney for the Debtor, thus receive compensation for the services rendered. Bankruptcy Rule 2014(b) deals with this question and provides that if a named attorney is authorized to be employed to represent the Debtor-in-Possession, any partner or regular associates or individual may act as attorney on behalf of the estate without further order of the Court. In light of the foregoing, this Court is satisfied that the fee application of Lancer & Vandroff, P.A., as proper even though Mr. Vandroff, a partner of Mr. Lancer, who was not expressly authorized to act as attorney for the Debtor-in-Possession.

Considering the contentions seriatim as outlined earlier, it should be noted at the outset that § 327(a) of the Code states a two-prong test for the employment of attorney. First, the Section requires that the attorney who seeks representation of a Debtor must hold no adverse interest to the estate and/or if the representation is sought for a trustee, interest adverse to the trustee in carrying on the trustees duties. Second, the attorney must be a disinterested person. See *In re Leasure Dynamics*, 33 B.R. 121 (D.Minn.1983). The term disinterested person is defined by § 101(13) of the Code which provides that one is a disinterested person who does not have any interest materially adverse to the interest of the estate by reason of any direct or indirect relationship to, connection with, or interest in, or *for any other reason*. Section 328(c) of the Code permits the Court to deny compensation to a professional in any case where the professional who seeks compensation represented and held an interest adverse to the interest of an estate.

■ In the present instance, as noted earlier, the Debtor was not represented by counsel at the time of the final evidentiary hearing. It produced no evidence whatsoever to support its contentions voiced earlier throughout this case that Lancer was not a disinterested person and therefore should not be allowed any compensation whatsoever. However, the evidence presented on behalf of Lancer & Vandroff, P.A., and Mr. Lancer in support of the fee application leaves no doubt that Mr. Lancer did at one time represent in a Chapter 11 case involving Dakal Development Corporation, Case No. 84–2481, Kalin Enterprises, an entity also controlled by Mr. Kalin who is the principal of Kalin Financial, Inc., the holder of a second mortgage on the property of this Debtor. In this case, Mr. Lancer filed a Motion and sought relief from the automatic stay on behalf of Kalin Enterprises. It should be noted that there is nothing in this record to indicate that Dakal Development had any connection whatsoever with this Debtor.

It is without dispute that the affidavit filed in connection with the application to employ Mr. Lancer failed to disclose any connection of Mr. Lancer with any party of

interest who had an interest adverse to the estate. Thus, in this particular instance his previous connection and involvement with Mr. Kalin, the principal of Kalin Financial Services and Kalin Enterprises.

It further appears that Mr. Kalin was, in this case, represented by Mr. Paderwaski who is the first cousin of Mr. Lancer. Moreover, Mr. Lancer admitted that he was requested repeatedly by Ms. Isaak to pursue an action attacking the Kalin mortgage on behalf of the estate (Lancer's Exhibit 11). In the second letter, dated April 24, 1986, which appears to be a response from Mr. Lancer to Ms. Isaak, indicates an unwillingness by Mr. Lancer to pursue any lawsuits on behalf of the Debtor against Kalin. Under these circumstances, it is clear that even if the Kalin mortgage was ultimately found to be immune from any attack, this decision should have been made by a completely detached neutral person and not by an attorney who had close connection with prospective defendant in this instance Mr. Kalin nor entities controlled by him. The fact of the matter is, Ms. Isaak's suggestion that she is willing to be appointed as special counsel for the estate also fell on deaf ears. There is no question that Mr. Lancer had sufficiently close interaction with Mr. Kalin, who is one of the major players in this Chapter 11 case, which connection certainly should have been disclosed by Mr. Lancer when he filed his application to be employed as counsel of record for the Debtor-in-Possession. Thus, while Mr. Lancer may not have had an actual conflict when the issue was raised as to the validity of the Kalin mortgage, it was sufficient as a "scintilla" of a personal interest which might have influenced his decision concerning vital interest of the estate, i.e. the validity of the Kalin mortgage. See *In re Martin,* 817 F.2d 175, 16 B.C.D. 112 (1st Cir.1987).

■ Based on the foregoing, this Court is constrained to conclude that while the total forfeiture would not be appropriate, the fee application of Mr. Lancer should be drastically reduced notwithstanding the testimony of the experts based on the following. First, because of his failure to disclose his connection with Mr. Kalin; second, because of his less than adequate services rendered on behalf of the estate; and, third, because of his poor time records, none after 1985.

■ This leaves for consideration a determination of the reasonableness of the fees sought by Lancer & Vandroff, P.A. § 330 of the Bankruptcy Code limits an attorney to

"reasonable compensation for actual, necessary services ... based on the nature, the extent and the value of such services, the time spent on such services and the cost of comparable services."

11 U.S.C. § 330(a) case law has been informative in setting forth factors for the Court to consider when determining the payment of attorneys' fees in a bankruptcy case, e.g. *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir.1974); *Matter of First Colonial Corporation of America,* 544 F.2d 1291 (5th Cir.), *cert. denied,* 431 U.S. 904, 97 S.Ct. 1696, 52 L.Ed.2d 388 (1977). Some Courts have also stated that ethical considerations are proper for the Court to consider when ruling on the propriety of awarding professional fees. See, e.g., *In re Coastal Equities, Inc.,* 39 B.R. 304 (Bkrtcy.S.D.Cal.1984) where the Court held that if an attorney holds an undisclosed adverse interest, a Court is empowered to deny all compensation. The Court reasoned that any ethical violations or conflicts of interest may lessen the value of the services rendered by the attorney.

Having considered the entire record, this Court is satisfied that the fee application of Mr. Lancer as amended is grossly excessive and he shall be entitled as compensation for his services an amount not more than $50,000.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the fee application of the law firm of Lancer & Vandroff, P.A., treated as a fee application of Mr. Lancer, be, and the same is hereby, granted and the Debtor be, and the same is hereby ordered to pay the sum of $50,000 to Mr. Lancer in full satisfaction of Mr. Lancer's administrative

claim within forty-five (45) days from the date of entry of this Order.

DONE AND ORDERED.