### In re SIESTA SANDS DEVELOPMENT CORPORATION, Debtor/Appellant.

No. 89-0330-CIV-T-17(A).

United States District Court,
M.D. Florida,
Tampa Division.

Aug. 14, 1990.

Malka Isaak, Tampa, Fla., for debtor/appellant.

Daniel Joy, Sarasota, Fla., for M.J. Lancer.

## ORDER ON APPEAL

KOVACHEVICH, District Judge.

This cause is before the Court on the appellant's appeal from the Bankruptcy Court's order extending the bar date for attorney fees, denial of motion to recuse, denial of a continuance of the Final Evidentiary Hearing, and award of fees to the original attorney for debtor. 95 B.R. 812.

## STANDARD OF REVIEW

Findings of fact by the Bankruptcy Court will not be set aside unless clearly erroneous. Bankruptcy Rule 8013; *In re Downtown Properties, Ltd.*, 794 F.2d 647

(11th Cir.1986). However, appellant is entitled to an independent, de novo review of all conclusions of law. *In re Owen*, 86 B.R. 691 (M.D.Fla.1988).

## FACTS

1. On January 6, 1984, Roland and Yvette Corneau and Tichenor & Linder Architects, Inc. filed an Involuntary Petition for Relief under Chapter 11 of the Bankruptcy Code against Siesta Sands Development Corporation (debtor). The Corneaus were creditors of the debtor as well as the only stockholders, officers, and principals. Debtor converted the proceeding to a voluntary petition on February 6, 1984.

2. Attorney M. Jay Lancer represented the debtor from June 24, 1984 until November 12, 1986. When the Corneaus first asked Mr. Lancer to represent the debtor, he allegedly informed them that he might have a conflict due to his prior representation of an entity owned by Ed Kalin, who also owned one of the secured creditors of the debtor. Mr. Lancer had not represented Mr. Kalin nor any of his entities in pre-petition dealings with the debtor, and Mr. Lancer was not presently involved in any dealings with Mr. Kalin or his companies. After allegedly obtaining permission from both the Corneaus and Mr. Kalin, Mr. Lancer agreed to represent the debtor. However, during the representation of the debtor and allegedly after informing the debtor, Mr. Lancer admittedly undertook some legal work for Mr. Kalin which was purportedly unrelated to the debtor.

3. After agreeing to represent the debtor, Mr. Lancer determined that the Corneaus had conflicts between their roles as both principals and creditors of the debtor. Mr. Lancer allegedly referred the Corneaus to attorney Malka Isaak for personal representation.

4. At some point, Ms. Isaak apparently requested Mr. Lancer to file a lawsuit against Mr. Kalin. However, after investigation, Mr. Lancer determined, and expert testimony at a later hearing showed, that all disputes between Mr. Kalin and the debtor had been adjudicated in the state court making them *res judicata*.

5. Throughout the representation of the debtor, Mr. Lancer often allegedly stated concerns about the payment of his fees. However, the Corneaus and Ms. Isaak allegedly continually assured Mr. Lancer that his fees would in fact be paid. Mr. Lancer did not file his fee request by the deadline apparently both because of these assurances by the Corneaus and Ms. Isaak and also because he knew the debtor was without funds with which to pay the fees until it sold its assets.

6. The debtor had only one asset, real property, and Mr. Lancer discussed the sale of this property with several parties to encourage reorganization. On February 21, 1986, Mr. Lancer filed a motion to sell the property free and clear of all liens. The motion was granted on June 2, 1986, with the order entered June 18, 1986. The reorganization plan was also confirmed at this time. This sale was to a corporation formed by the Corneaus and was consummated in September of 1986 resulting in a payment of $800,000 to the debtor. Ms. Isaak alleges several improprieties on the part of Mr. Lancer in connection with this sale, and on October 3, 1987, Mr. Kalin filed an emergency motion to vacate the sale because the property was sold free and clear of his liens without notice.

7. Sometime thereafter, the Corneaus alleged the existence of conflicts, fraud and negligence on the part of Mr. Lancer in his representation of the debtor. Ms. Isaak acknowledged that the Corneaus had intentionally concealed these beliefs since June of 1986 to encourage Mr. Lancer to continue representation of the debtor. Mr. Lancer filed the motion to withdraw as counsel at the hearing on Kalin's motion, on December 6, 1986, after he allegedly learned of the Corneaus' claims. The order to withdraw was granted December 18, 1986.

8. Attorney Peleaz was appointed as counsel for the debtor on December 11, 1986, and Attorney Joel Treuhaft was subsequently appointed after the withdrawal of Mr. Peleaz. Both appointments were made despite the requests of Ms. Isaak to, herself, be appointed as attorney for the debtor.

9. On January 20, 1987 Mr. Lancer filed his fee application. Thereafter, Mr. Kalin agreed not to pursue the motion to vacate when his claim, regarding outstanding liens on the property, settled for $150,000. This settlement was over the objections of Mr. Lancer who feared that, as a result, his fees would not be paid. On April 16, 1987, Mr. Lancer filed a Motion to Extend Bar Date. The debtor objected to both motions by Mr. Lancer because of late filing, incompetence, wrongfully included services and conflict of interest.

10. The Court held several hearings on Mr. Lancer's motions, and because such evidence was irrelevant to the issue of extending the bar date, no evidence regarding the alleged conflicts of interest was heard. However, the order granting the motion to extend contained a finding of "no conflict" and also awarded fees of $50,000. The order was later vacated by Judge Paskay at the urging of both parties so that evidence regarding the conflict could be heard. The final evidentiary hearing was set for May 6, 1988.

11. At the May 6, 1988 hearing, Ms. Isaak argued that Judge Paskay should recuse himself stating that the record indicated bias against the debtor. Ms. Isaak based her argument on the Judge's statements at a March 21, 1988 hearing and on the prior, vacated ruling which held that no conflict existed despite never hearing evidence on the matter. The Judge denied the motion to recuse holding that his previous order had been vacated due to his mistake and not due to his partiality.

12. At this hearing, Judge Paskay also tried to determine why the motion to recuse was signed by Mr. Treuhaft but argued by Ms. Isaak. Several times the judge noted that this indicated an attempt by Ms. Isaak to avoid any possibility of Rule 9011 sanctions. However, this issue was not definitively decided.

13. Finally, the debtor's latest attorney filed for withdrawal on which there was a hearing on June 8, 1988 with the final order entered August 9, 1988. A pre-trial confer-

ence was held on June 24, 1988, and the Judge set the final evidentiary hearing for August 22, 1988, and permitted Ms. Isaak to represent the debtor provided she not participate as counsel for the attorney fee issue since Ms. Isaak was, herself, a witness. Thus, the debtor had from June 8, 1988 until August 22, 1988 to obtain counsel for the fee issue at the final evidentiary hearing.

14. Ms. Isaak, on behalf of the debtor, moved for a continuance of the final hearing on August 15, 1988, 7 days before the hearing, alleging that more time was needed to obtain an attorney for the debtor. At the final hearing Judge Paskay denied the request finding that ample time had already been provided and that the motion was procedurally in error. Thereafter, Ms. Isaak left the final hearing and no counsel for the debtor was ever present despite proper notice.

15. No evidence was presented at this hearing to support the contentions of misconduct and conflict. Judge Paskay ruled that there was no evidence to indicate a conflict existed. Thus, Mr. Lancer was awarded a fee of $50,000 and the debtor appealed to this Court.

## ISSUES

I. WHETHER THE BANKRUPTCY COURT ERRED IN PERMITTING THE EXTENSION OF THE FEE APPLICATION BAR DATE.

II. WHETHER THE BANKRUPTCY JUDGE ERRED IN REFUSING TO RECUSE HIMSELF.

## DISCUSSION

I. THE BANKRUPTCY COURT ERRED BY EXTENDING THE FEE APPLICATION BAR DATE SINCE THERE WAS NO SHOWING OF EXCUSABLE NEGLECT.

In Bankruptcy Court, Congress intended the bar date to be a mechanism to provide the debtor and creditors with "finality". *In re Norris Grain Co.,* 81 B.R. 103, 106 (Bankr.M.D.Fla.1987). "For this reason, courts look upon the bar date as a kind of statute of limitations." *Id.* (Citations omitted).

Bankruptcy Rule 3003(c)(3) provides that "[t]he court shall fix and for cause shown may extend the time within which a proof of claim or interest must be filed." The Eleventh Circuit Court of Appeals in *In re South Atlantic Financial Corp.,* 767 F.2d 814, 817 (11th Cir.1985), *cert. denied,* 475 U.S. 1015, 106 S.Ct. 1197, 89 L.Ed.2d 311 (1986), ruled that the "cause" to be shown for an extension under this rule must be read in conjunction with Bankruptcy Rule 9006(b). Bankruptcy Rule 9006(b) provides:

> when an act is required or allowed to be done at or within a specified period by these rules or by a notice given thereunder or by order of court, the court for cause shown may at any time in its discretion ...
>
>> (2) on motion made after expiration of the specified period permit the act to be done where the failure to act was the result of *excusable neglect.*

(Emphasis added). Thus, the Eleventh Circuit has held that when leave is sought to file a proof of claim after the expiration of the bar date, the movant must show "excusable neglect." *South Atlantic* at 817.

To establish "excusable neglect" under Rule 9006(b), the moving party must prove that a failure to timely perform a duty was caused by circumstances beyond the reasonable control of the person whose duty it was to perform them. *South Atlantic* at 817. Courts have utilized the excusable neglect standard in a number of cases. The court in *Sherrod v. Piedmont Aviation, Inc.,* 516 F.Supp. 39, 41 FN 1 (E.D.Tenn.1978), generally ruled that excusable neglect did not exist when a counsel's failure to act was caused by simple inadvertence, mistake regarding the content of the rules, or unfamiliarity with the rules. More specifically, the court in *In re Gem Rail Corp.,* 12 B.R. 929 (Bankr.E.D. Pa.1981), found no excusable neglect when a creditor did not acquire easily obtainable records to ensure timely filing of a claim. Also in *In re Horn Construction & Maintenance, Inc.,* 32 B.R. 87 (Bankr.S.D.Ala.

1983), the court found no excusable neglect when a misunderstanding between a creditor and their attorney caused the late filing of a proof of claim.

In the instant case, the Bankruptcy Court set a fee application bar date, but Mr. Lancer failed to file his claim within the allowed time. The reasons stated for the failure were reliance on the promises of the defendant and Ms. Isaak and also because of the debtor's lack of assets. Such facts do not show neglect or circumstances beyond the control of Mr. Lancer, but, in fact, indicate a knowing and purposeful failure to file. Mr. Lancer's failure to file was not due to any excusable neglect, or even plain neglect for that matter, and thus his failure to file within the allowed time should not have been excused.

Accordingly, appellant has failed to show any circumstance of excusable neglect with which this Court could possibly uphold the Bankruptcy Court's extension of the bar date. *Accord In re Wolray Hotels, Inc.,* 99 B.R. 480 (Bankr.M.D.Fla.1989). For this reason, this Court must hold that the Court below improperly extended the bar date and allowed Mr. Lancer to file his claim for attorney fees. This holding disposes of the appellant's further objections to the proceedings regarding the fees except for the objection regarding recusal of the bankruptcy judge.

## II. THE BANKRUPTCY JUDGE DID NOT ERR BY REFUSING TO RECUSE HIMSELF.

Title 28 U.S.C. § 455 dictates the standards for recusal of a judge. According to this section, recusal is required when a judge's impartiality might reasonably be questioned or if there exists any one of five indicators of personal interest, relationship or prejudice regarding the outcome of a case. When deciding whether a judge's impartiality might reasonably be questioned, a court should examine whether a reasonable person, knowing all the circumstances, would be led to conclude that the judge has actual knowledge of the facts indicating his interest or bias in the case. *Liljeberg v. Health Services Acquisition Corp.,* 486 U.S. 847, 108 S.Ct. 2194, 100 L.Ed.2d 855 (1988).

In the instant case, there has been no showing of bias on the part of the learned bankruptcy judge. Neither Ms. Isaak nor Mr. Treuhaft put forth evidence to substantiate their allegations of partiality on either the many occasions given by Judge Paskay or in their brief for this Court. Their claim is grounded in the Bankruptcy Court's original order granting Mr. Lancer attorney fees before any evidence had been heard regarding the alleged conflicts of interest. Judge Paskay stated, on the record, that the order was not due to prejudice by him, but was in fact a mere mistake. This Court holds that a reasonable person would not conclude that, merely by making this error, Judge Paskay was partial to one side of the dispute.

After reading the transcripts from the various hearings and reviewing the record, this Court holds that Judge Paskay was fair and impartial throughout the many hearings. While the Judge did appear somewhat frustrated throughout this lengthy ordeal due to the questionable professionalism displayed in his courtroom, this Court does not find that he should have recused himself. "There is as much obligation upon a judge not to recuse himself when there is no occasion as there is to do so when there is." *Blizard v. Fielding,* 454 F.Supp. 318, 323 (D.Mass.1978). Therefore, the Bankruptcy Court did not err in denying the appellant's motion to recuse.

## CONCLUSION

Because there was no showing of excusable neglect by Mr. Lancer, the Bankruptcy Court erred by extending the fee application bar date. The Bankruptcy Court did not err by failing to grant the motion to recuse since the movant had failed to put forth evidence to support the claim of partiality. Accordingly, it is

ORDERED that the Bankruptcy Court's order granting Mr. Lancer attorney fees after the bar date is REVERSED. It is further ORDERED that the Bankruptcy Court's denial of the motion to recuse is

AFFIRMED. This action is hereby RE-MANDED to the Bankruptcy Court for an order consistent with these findings.

DONE and ORDERED.